DAVID J. BROWN, ESQ. (SBN 56628)
(davidb@mbvlaw.com)
MBV LAW LLP
davidbrown@mbvlaw.com
855 Front Street
San Francisco, California 94111
Telephone:    415-781-4400
Facsimile:    415-989-5143

Attorneys for Plaintiff John A. Ryan
And His Attorneys

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re | CASE NO. 05-32933 Chapter 7 |
| JOHN A. RYAN and DANIELLE T. RYAN, | |
| Debtors, | |
| JOHN A. RYAN, an individual, | ADVERSARY NO. 09-03134 |
| Plaintiff, | |
| v. | **DECLARATION OF DAVID J. BROWN IN SUPPORT OF PLAINTIFF'S AND HIS ATTORNEYS' RESPONSE TO DEFENDANTS' MOTION FOR RULE 9011 SANCTIONS** |
| NICKLOS CIOLINO; CHARLES CIOLINO; ROBERT AGUILAR; STEPHEN DANIELE; DANIEL DELORENZI; ALMA CIOLINO; EVELYN CIOLINO; PRISCILLA AGUILAR; THERESA DANIELE; and DOES 1 to 25, inclusive, | DATE: AUGUST 6, 2010<br>TIME: 11:00 AM<br>PLACE: DEPARTMENT 22<br>JUDGE: MONTALI |
| Defendants. | |

DECLARATION OF DAVID J. BROWN

**M B V   L A W   L L P**
855 Front Street
SAN FRANCISCO CA 94111

1    I, David J. Brown, hereby declare:

2    1.    I am employed by MBV Law LLP, attorneys of record for debtor and plaintiff

3    John A. Ryan.  I have personal knowledge of the following facts and, if called as a witness, I

4    could and would competently testify to the following.

5    2.    Attached hereto as Exhibit A is a true and correct copy of this Court's Order

6    Granting Plaintiffs' Motion for Summary Judgment on Complaint for Non-Dischargeability,

7    entered on July 19, 2006.

8    3.    Attached hereto as Exhibit B is a true and correct copy of the Proof of Service of

9    Summons on Daniel DeLorenzi.

10   4.    Attached hereto as Exhibit C is a true and correct copy of plaintiff's Complaint in

11   Equity for Relief Regarding Judgments Obtained by Extrinsic Mistake and Extrinsic Fraud.

12   5.    Attached hereto as Exhibit D is a true and correct copy of the letter threatening

13   sanctions from Mr. Liberty dated January 5, 2010.

14   6.    Attached hereto as Exhibit E is a true and correct copy of plaintiff's response to

15   Mr. Liberty's letter identifying why the threat of sanctions was without basis in law dated

16   January 11, 2010.

17   I declare under penalty of perjury that the foregoing is true and correct and that this

18   declaration was executed on July 9, 2010 at San Francisco, California.

19

20   */s/ David J. Brown* _____
David J. Brown

21

22

23

24

25

26

27

28

DECLARATION OF DAVID J. BROWN

# EXHIBIT A



1

2       **Signed and Filed: July 19, 2006**

3

4       **DENNIS MONTALI**
        **U.S. Bankruptcy Judge**

5

6                   UNITED STATES BANKRUPTCY COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8

9    In re                          ) Bankruptcy Case
                                     ) No. 05-32933-DM
     JOHN A. RYAN and DANIELLE T. RYAN, )
10                                   )
                          Debtors.   ) Chapter 11
11                                   )
     _____    )
     NICKLOS CIOLINO; CHARLES CIOLINO; ) Adversary Proceeding
12   DANIEL DELORENZI; ROBERT AGUILAR; ) No. 05-3486
     and STEPHEN DANIELE,            )
13                                   )
                          Plaintiffs, )
14                                   )
     v.                              )
15                                   )
     JOHN RYAN,                      )
16                                   )
                          Defendant. )
17   _____    )

18              ORDER GRANTING PLAINTIFFS' MOTION FOR
        SUMMARY JUDGMENT ON COMPLAINT FOR NON-DISCHARGEABILITY
19

20        The motion of plaintiffs Nicklos Ciolino, Charles Ciolino,

     Daniel Delorenzi, Robert Aguilar and Stephen Daniele for summary
21
     judgment on their complaint for non-dischargeability came on
22
     regularly for hearing on April 28, 2006, at 10:00 a.m., and
23
     continued hearing on June 16, 2006, at 11:00 a.m., before the
24
     Honorable Dennis Montali.
25
          Appearing for Plaintiffs were Michael D. Liberty and Jeffrey
26
     T. Rizzo.  Appearing for Defendant and Debtor-In-Possession John
27
     Ryan was T. Michael Turner.
28

                                -1-

1     After considering the papers on file and the arguments of

2 counsel, for the reasons stated on the record, the court rules as

3 follows:

4     1.   Plaintiffs' motion for summary judgment is GRANTED.

5     2.   Plaintiffs are entitled to judgment declaring that their

6 judgments against defendant John A. Ryan in the Superior Court of

7 California, County of San Mateo, Case Nos. 422430 through 422435,

8 filed on March 17, 2004, are non-dischargeable through bankruptcy

9 as to defendant John A. Ryan.

10                       \*\*END OF ORDER\*\*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

```
 1                              COURT SERVICE LIST
 2    T. Michael Turner, Esq.
      236 W. Portal Ave., #53
 3    San Francisco, CA 94127-1423

 4    James F. Beiden, Esq.
      Law Offices of James F. Beiden
 5    840 Hinckley Rd., #245
      Burlingame, CA 94010
 6
      Michael D. Liberty, Esq.
 7    Law Office of Michael D. Liberty
      1290 Howard Ave., Ste. 303
 8    Burlingame, CA 94010

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

-3-

# EXHIBIT B

DAVID J. BROWN (SBN 56628)
MBV LAW LLP
855 Front Street
San Francisco, CA 94111
Telephone: (415) 781-4400
Attorney for: Plaintiff

FOR COURT USE ONLY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF MARIN

Plaintiff : JOHN A. RYAN, AN INDIVIDUAL

Defendant : NICKLOS CIOLINO, et al.

Ref#: 259706   **PROOF OF SERVICE OF SUMMONS**   Case No.: CIV 093299

1. At the time of service I was at least eighteen years of age and not a party
   to this action.

2. I served copies of:
   SUMMONS; COMPLAINT IN EQUITY FOR RELIEF REGARDING JUDGMENTS OBTAINED BY
   EXTRINSIC MISTAKE AND EXTRINSIC FRAUD, WITH CAUSES OF ACTION: (1) TO VACATE
   JUDGMENTS ON CONSOLIDATED ACTIONS; (2) TO ENJOIN EXECUTION ON JUDGMENTS
   RECEIVED IN CONSOLIDATED ACTIONS; (3) TO RECOVER FUNDS RECEIVED FROM
   PLAINTIFF BY VIRTUE OF JUDGMENTS ON CONSOLIDATED ACTIONS; NOTICE OF CASE
   MANAGEMENT CONFERENCE (CIVIL); ADR PACKET

3. a. Party served   : DANIEL DeLORENZI

4. Address where the party was served:
                     (Home)
                     70 Elizabeth Way
                     San Rafael, CA 94901

5. I served the party
   a. by personal service. I personally delivered the documents listed in item
      2  to the party or person authorized to receive service of process for
      the party (1) on: July 12, 2009 (2) at:  9:15 PM

**PROOF OF SERVICE OF SUMMONS**

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. as an individual defendant

7. Person who served papers:
   a. JAVIER BARAONA
   b. SPECIALIZED LEGAL SERVICES, INC.
      1112 Bryant Street, Suite 200
      San Francisco, CA 94103
   c. Telephone number: (415) 357-0500
   d. The fee for service was: $1,050.00
   e. I am:
      (3) a registered California process server:
          (i) owner, employee or independent contractor
          (ii) Registration no.: 118
          (iii) County: Marin

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 13, 2009

JAVIER BARAONA

POS-010 Rev. January 1, 2007

259706

# EXHIBIT C

DAVID J. BROWN (SBN 56228)
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone: (415) 781-4400
Facsimile: (415) 989-5143

Attorneys for Plaintiff
John A. Ryan


FILED

JUL - 1 2009

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: K. Main, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

JOHN A. RYAN, an individual,

Plaintiff,

v.

NICKLOS CIOLINO, CHARLES
CIOLINO, ROBERT AGUILAR,
STEPHEN DANIELE, DANIEL
DELORENZI, ALMA CIOLINO,
EVELYN CIOLINO, PRISCILLA
AGUILAR, and THERSA DANIELE,
individually,

Defendants.

CASE NO. CIV 09329 BY FAX

**COMPLAINT IN EQUITY FOR RELIEF
REGARDING JUDGMENTS OBTAINED
BY EXTRINSIC MISTAKE AND
EXTRINSIC FRAUD, WITH CAUSES OF
ACTION: (1) TO VACATE JUDGMENTS
ON CONSOLIDATED ACTIONS; (2) TO
ENJOIN EXECUTION ON JUDGMENTS
RECEIVED IN CONSOLIDATED
ACTIONS; (3) TO RECOVER FUNDS
RECEIVED FROM PLAINTIFF BY
VIRTUE OF JUDGMENTS ON
CONSOLIDATED ACTIONS**

Plaintiff John A. Ryan ("Ryan") alleges:

### GENERAL ALLEGATIONS

1.      Plaintiff John A. Ryan is an individual.

2.      Defendant Nicklos Ciolino ("N. Ciolino") is an individual and is sued herein in that capacity.

3.      Defendant Charles Ciolino ("C. Ciolino") is an individual and is sued herein in that capacity.

4.      Defendant Robert Aguilar ("Aguilar") is an individual and is sued herein in that capacity.

COMPLAINT IN EQUITY

1       5.     Defendant Stephen Daniele ("Daniele") is an individual and is sued

2 herein in that capacity.

3       6.     Defendant Daniel DeLorenzi ("DeLorenzi") is an individual and is sued

4 herein in that capacity.

5       7.     Collectively the aforementioned defendants will be referred to as the

6 "Underlying Plaintiffs."

7       8.     Defendant Alma Ciolino is an individual and is sued herein in that

8 capacity.

9       9.     Defendant Evelyn Ciolino is an individual and is sued herein in that

10 capacity.

11      10.     Defendant Priscilla Aguilar is an individual and is sued herein in that

12 capacity.

13      11.     Defendant Thersa Daniele is an individual and is sued herein in that

14 capacity.

15      12.     Collectively the defendants listed in paragraphs 8-11 will be referred to as

16 the "Wives."

17      13.     The Wives are named in this suit as nominal defendants because Ryan is

18 informed and believes and on that information and belief alleges that they each have a

19 community property interest in the judgments and liens obtained respectively against

20 Ryan by their spouses. The purpose of naming them is to have them noticed, given the

21 opportunity to appear herein and be bound by the result of this action. Upon request,

22 any of the Wives that does not care to participate in this action will be dismissed but

23 must understand that under California law the community property including the

24 wife's interest in it will be bound by the result. *See, e.g., Reynolds & Reynolds Co. v.*

25 *Universal Forms, Labels & Systems, Inc.,* 965 F. Supp. 1392, 1397 (C.D. Cal.1997).

26      14.     This is a case in which the extrinsic factors described below prevented

27 Ryan from presenting his case because of improper bias and mistaken rulings by the

28 trial court, and inappropriate actions and tactics by the Underlying Plaintiffs' counsel.

Case: 09-03134   Doc# 32   Filed: 07/09/10   Entered: 07/09/10 16:43:34   Page 12 of
26
61014.01/412955.DOC     -2-
COMPLAINT IN EQUITY

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

15. Ryan lost fraud, contract and other claims for his purported operation of a Ponzi scheme. At the trial great weight and emphasis was made in the form of questions and testimony suggesting that unproven allegations in a Securities and Exchange Commission ("SEC") Complaint were in fact an SEC Report proving the alleged facts. On that incorrect basis and reliance on the SEC Complaint, several of the Underlying Plaintiffs and their purported securities expert asserted that Ryan ran the Ponzi scheme and conspired with others to do so. Ryan asserted to the limited extent the trial court let him, to the contrary. Well after the jury reached its conclusions against Ryan, the SEC in settling its administrative claims against Ryan said:

> Between January 1, 2001 and July 5, 2001, Ryan was associated with Paramount Financial, a purported hedge fund that was falsely represented to investors as generating large returns for clients. **Unbeknownst to Ryan at the time**, Paramount Financial was in fact not a hedge fund and did not buy or sell securities for clients' accounts. Ryan, however, at the direction of Cummings, acted as an unregistered investment adviser that used investor funds to repay prior investors and for personal and business expenses.

(Emphasis added.)

16. This recognition that Ryan did not know the character of Paramount Financial is flat contrary to the gist of the Underlying Plaintiffs' case and highlights the extrinsic mistake the trial court made in allowing the panoply of testimony about the unproven allegations of the SEC Complaint to become the "facts" that permeated the trial. This is one example of several themes in the underlying case that the trial court permitted to effectively deny Ryan a fair opportunity to present his case without unjustified negative bias against him. That theme and others are detailed below.

17. Further, but later in time after the trial was over, exoneration of Ryan occurred when criminal investigations in Ohio and Florida that included examining in detail Ryan's conduct, resulted in Ryan in Ohio being determined to be a victim, not to be prosecuted. Instead Ohio undertook criminal prosecutions of others related to the set of facts arising from the activities that were addressed in the Underlying Plaintiffs' case against Ryan. Indicative of the time required fully to review and investigate in

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

61014.01/412955.DOC                                -3-
COMPLAINT IN EQUITY

1 detail the actual facts of what occurred, the Ohio investigation started in 2003 and took
2 several years to reach a point where prosecution of the true bad guy occurred. A longer
3 timeframe was involved in the Florida criminal investigation and prosecution. The
4 result, however, is that Ryan was again exonerated, but his inability fully to present the
5 true facts at the trial in the underlying case against him is punctuated by the extensive
6 time, energy and money it took prosecutorial teams in Ohio and Florida to reach their
7 respective conclusions as to what actually happened.

## THE UNDERLYING CONSOLIDATED ACTIONS

9       18.     On or about April 30, 2002, each defendant by separate pleadings, sued
10 Ryan for Fraud, Negligent Misrepresentation, Negligence, Breach of Fiduciary Duty,
11 Breach of Oral Contract, Unfair Business Practices under Section 17200 of the
12 California Business and Professions Code. C.Ciolino additionally included a cause of
13 action for Financial Abuse of an Elder.

14      19.     On or about July 23, 2002, Ryan cross-complained against each of the
15 Underlying Plaintiffs and the true bad persons and entities who, if anyone had, had
16 committed the wrongs asserted by the Underlying Plaintiffs against Ryan. Those bad
17 persons and entities included Von C. Cummings, Paramount Financial Partners,
18 Paramount Capital Management and others.

19      20.     On October 17, 2002, the Superior Court before which the actions
20 pended, consolidated the actions and specified that the N.Ciolino action, with Action
21 Number 422430 in the Superior Court of the State of California, County of San Mateo,
22 would thereafter be considered the master file for the consolidated actions.

23      21.     The consolidated actions were called for trial on December 2, 2004.

24      22.     Prior to the trial certain events occurred that were improperly referenced
25 at trial and utilized by the Underlying Plaintiffs to bias the result and not permit Ryan
26 to have a fair and impartial trial, and that conduct was mistakenly permitted and
27 condoned by the Court. To state it colloquially, the Underlying Plaintiffs, and the Court
28 rang the bell in front of the jury against Ryan with the Court then preventing Ryan

from making full response to "un-ring" the bell, if it would have been possible at all.

a. Prejudgment Attachment – each of the Underlying Plaintiffs under California Code of Civil Procedure Sections 481.010, *et seq.*, obtained a writ of attachment based on alleged oral contracts with Ryan. These writs of attachment created liens on Ryan's home subject to a first deed of trust and Ryan family's homestead exemption. The evidentiary support for the attachments was largely via declarations by the Underlying Plaintiffs and their attorney asserting unsupported factual assumptions and legal conclusions.

b. SEC Complaint – on about June 25, 2002, the SEC filed a complaint against Ryan and others (both persons and entities) alleging various violations of the securities laws with respect to the types of investments made by the Underlying Plaintiffs. That complaint consisted of factual allegations and was not testimony, affidavits, sworn statements, or evidence of any kind.

## ACTS OF EXTRINSIC MISTAKE AND EXTRINSIC FRAUD THAT MATERIALLY DEPRIVED PLAINTIFF OF A FAIR ADVISORY TRIAL

### The Complexity of the Extrinsic Factors at Play Here

23. This case of actionable extrinsic fraud and extrinsic mistake is consistent with the cases that permit independent actions in equity to vacate or otherwise reduce the impact of judgments obtained because of extrinsic fraud and extrinsic mistake. However, Ryan anticipates that the defendants will assert that Ryan seeks remedies for acts of intrinsic fraud and intrinsic mistake. To the extent it pushes against that limit, which Ryan does not believe it does, the suit is intended to extend that limit as a progression of the current law to permit correction of egregious results, even at the price of narrowing ever so slightly the concept of finality of actions.

24. What makes this case challenging, is that there were a combination of several matters that resulted in an impermissible and unfair trial situation. Additionally, much of what occurred here was not only the direct prohibition of Ryan being able to present some major points. Rather, it was the trial court's willingness,

coupled with the improper conduct of the Underlying Plaintiffs and their counsel, to permit several improper, unsuitable and unjustifiable matters to go before the jury to the detriment of Ryan in a manner and degree to make the trial process unfair and reprehensible.

25. These problems included:

    a. Repeated testimony of witness reliance on the SEC Complaint – called a "SEC Report" by the Underlying Plaintiffs, their counsel and their expert witness, even though it was unproven allegations that had not been adjudicated.

    b. Testimony of the Underlying Plaintiffs' securities expert to the effect that much purported conduct of Ryan violated the securities laws, legal conclusions that belonged in the province of the Court.

    c. Numerous references to the prejudgment attachment liens granted to the Underlying Plaintiffs against Ryan's home, even though such references directly violated the prohibition of such references contained within the prejudment attachment statutes. The result being the jury could strongly infer and conclude that the Court already had concluded that Ryan had committed wrongs.

    d. The trial court giving a jury instruction that the jury could award damages for unfair business practices under California Business and Professions Code Sections 17200, *et seq.*, an instruction totally contrary to the law.

26. Examples of some of these problems are:

### The Taint from the SEC Complaint

27. Although the trial court in the Underlying Plaintiffs' action would not permit the actual SEC Complaint to be entered as evidence, it allowed numerous references to it as testimony before the jury and expert testimony by the Underlying Plaintiffs' securities expert, who largely relied upon it as a basis for his opinion that Ryan's conduct violated the securities law. By way of example of what was allowed to be said relative to these allegations, which allegations the Underlying Plaintiffs, their expert and others often called a "SEC Report," the jury heard:

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

1    Q. You read a report [the SEC Complaint] that said Von
2    Cummings has defrauded hundreds of people around the country and
     stolen millions of dollars; is that right?  Right?

3    A. [C. Ciolino]  I read a report from the SEC is that stated Von
     Cummings had a Ponzi scheme and John Ryan had his own Ponzi scheme.
4
5    Q. John Ryan had his own Ponzi scheme?

6    A. Yes, that's what it said.

7    (Testimony by Underlying Plaintiff C. Ciolino.)

8    I have relied in terms of understanding the Informax transaction
     through discussions, with your [Underlying Plaintiffs' attorney] clients,
9    and/or the SEC Complaint.

10                                      * * *

11   Q. You've had an opportunity to review the SEC Complaint?

12   MR. FRANECKE:  Objection, Your Honor.

13   THE COURT:  The objection is overruled.

14   THE WITNESS:  That's correct.

15   (Testimony by Witness Karel—the Underlying Plaintiffs' purported expert.)

16        28.    Such references to the SEC Complaint and its unproven allegations

17   created a bias that prohibited Ryan from fairly presenting his case and the permitting

18   of such references constitute extrinsic mistake by the trial court.

19            **Improper Prejudice from the Pre-Judgment Attachment**

20        29.    California Code of Civil Procedure Section 484.100 provides:

21             The court's determinations under this chapter shall have no effect
         on the determination of any issues in the action other than issues
22       relevant to proceedings under this chapter nor shall they affect the rights
         of the plaintiff or defendant in any other action arising out of the same
23       claim of the plaintiff or defendant.  The court's determinations under this
         chapter shall not be given in evidence nor referred to at the trial of any
24       such action.

25        30.    Despite this clear prohibition to use attachment determinations at trial,

26   the Underlying Plaintiffs, and at the instigation of their attorney, other witnesses, did

27   refer to those determinations to Ryan's significant detriment, in manner and with the

28   intent to prevent a fair hearing on the merits of the case.  In short, the extrinsic mistake

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

1  by the trial court in allowing the many references it did to the attachment liens, created

2  an environment that could not be overcome because of the appearance that the Court

3  in granting the liens had already determined that Ryan had done something highly

4  improper toward the Underlying Plaintiffs.

5          31.     By way of example of what was allowed to be said relative to the

6  attachment liens, the jury heard:

7          MR. LIBERTY:  Q.  Were you going to sue Mr. Ryan?

8          A.  I came to talk to you about if I had a chance to get a lien on John
   Ryan's home like you had done for the – I don't know – the group of
9  people you are representing today.

10          Q.  You understood that I have or I had put liens on Mr. Ryan's
   house on behalf of my clients?
11

12          A.  Yes.  What I had done, I found out there were attachments or
   liens on John's house, and I thought, wow, if – because at this point,
13  people started having rumors that John had done a Ponzi scheme, or these
   were – these allegations John was involved with this Von Cummings, and
14  they swindled everybody.

15  (Testimony by Witness Stewart a client of Mr. Liberty, the Underlying Plaintiffs'

16  counsel.)

17          MR. LIBERTY:  Q.  Now, last point.  You gave Chazen a deed for
   $960,000?
18

19          A.  [by Mr. Stewart] Uh-huh.

20          Q.  Correct?

21          A.  $967,000, correct.

22          Q.  Right.  And you said: "Hey, Larry Chazen, you better go ahead
   and record this on my house because my clients are recording Court
23  ordered liens on my house shortly," true?

24          A.  No, not true.

25          Q.  You understand that that $967,000 Chazen lien was recorded
   one week after my clients' liens; is that right, Mr. Ryan?
26          A.  I don't understand the argument here, Mr. Liberty.

27          THE COURT:  Wait.  Please.  Do you understand the question?

28          THE WITNESS:  I understand that Mr. Chazen –

M B V   L A W   L L P
855  FRONT  STREET
SAN FRANCISCO  CA 94111

1   THE COURT: Do you understand the question?

2   THE WITNESS: Can you rephrase the it, please?

3   MR. LIBERTY: Sure.

4   Q. You understand that Mr. Chazen recorded this $967,000 lien
    one week after my clients recorded five liens on your house?

5

6   A. I know that Mr. Chazen's lien was after your clients. I don't
    know if it was one week or 10 days or 12 days.

7   Q. But it was in that time period?

8   A. I believe so, yes.

9   32.    There has been no want of diligence imputable to Ryan in bringing this

10  action. Ryan now takes action after all other avenues of relief have been pursued and

11  after the true facts favorable to Ryan and contrary to the improper result in the

12  Underlying Plaintiffs' consolidated action, were developed and acted upon by the Ohio

13  and the Florida prosecutors.

14  33.    Judgment in the Underlying Plaintiffs' case was entered on January 22,

15  2004. Ryan timely filed a notice of appeal. Amended judgments were entered on

16  March 17, 2004, awarding the Underlying Plaintiffs prejudgment interest. The

17  appellate court affirmed the judgments in the Underlying Plaintiffs' consolidated case

18  on August 29, 2005.

19  34.    The focus of the dispute then moved to the Bankruptcy Court after Ryan

20  filed for bankruptcy. What followed were a number of disputes among the Underlying

21  Plaintiffs, and a third party lien holder regarding the priority of their respective liens,

22  and related issues. Those disputes have gone up the appellate chain in the bankruptcy

23  setting leading to an appellate decision by the Ninth Circuit Court of Appeal in early

24  February, 2009. Disputes over disposition of Ryan's assets continue to exist in the

25  Bankruptcy Court. While Ryan by necessity has participated in these Bankruptcy

26  Court, Federal District Court, and Federal Court of Appeal matters, the continuing fight

27  about the nature and scope of the original pre-judgment liens obtained in the

28  Underlying Plaintiffs' consolidated action in state court has been fought among the lien

M B V   L A W   L L P
855 FRONT STREET
SAN FRANCISCO CA 94111

1   claimants.

2       35.  Over the same time frame, new facts and perspective on Ryan's role in the
3   fraud developed very favorably to Ryan.  These developments in both Ohio and Florida
4   resulted in Ryan being determined by those respective prosecutors to be a fraud victim,
5   rather than a conspirator perpetrating it.

6       36.  Specifically, after an approximate eight-year investigation (1998-2006),
7   on or around February 16, 2006, the Grand Jury from the Southern District of Ohio
8   Eastern Division indicted "Cummings" and not Ryan for crimes constituting the fraud
9   for which Ryan was determined to be responsible in the Underlying Plaintiffs'
10  consolidated actions.  On or around June 26, 2008, Mr. Cummings was sentenced to
11  40 months imprisonment and ordered to make restitution to investors in the amount of
12  $8,308,094.

13      37.  On June 5, 2008 the State of Florida filed a Second Amended Complaint
14  against "Noel."  The Second Amended Complaint included the fraudulent activities by
15  "Noel" as related to the Underlying Plaintiff's judgment creditor "Daniele's" investment
16  with "Morningstar."

17      38.  With respect to the State of Florida action, Ryan was deposed on or
18  around March 2005.  After his testimony, the state concluded that Ryan was a victim of
19  Wilson, DeFalco and deLuise with respect to the fraud.  Ryan was bought into the case
20  by the prosecutors as a victim.  Ryan worked with the statewide prosecutor's office to
21  lay out the conduct of Wilson, DeFalco and deLuise in California and their activities as
22  related to the Danieles' investment with Morningstar Financial Group.  After Ryan's
23  trial testimony in October 2007, the state provided Ryan with banking records
24  indicating deLuise received over $200,000 from Paramount to promote the investment
25  scheme.  William DeFalco entered into a plea agreement with the state of Florida.  He
26  served his time, and is paying restitution.  DeFalco two months ago told Ryan that after
27  getting out of jail, he promised his children he would do what was right to undo the
28  harm he caused, and was more than willing to tell the whole story on how Wilson and

deLuise, not Ryan, defrauded investors, including Stephen Daniele.

39.     On May 18, 2009, "Ryan" received notification from the State of Florida that the *State of Florida vs. Noel* matter is scheduled to begin trial in late July 2009. The state told Ryan that it cannot prove the crimes committed by Jean Claude Noel without Ryan's testimony as a victim. Florida also thanked Ryan greatly for his patience in bringing these crimes to trial. All of the events described in paragraphs 33-39 had to occur before Ryan was in a reasonable position to seek the assistance of the court of equity in this action.

## FIRST CAUSE OF ACTION

## TO VACATE JUDGMENTS ON CONSOLIDATED ACTIONS

### (Against All Defendants)

40.     Ryan incorporates herein by this reference each and every allegation contained in paragraphs 1-39, above.

41.     Had the improper extrinsic fraud and extrinsic mistake not occurred, there would be insufficient evidence to support an intentional fraud case against Ryan, damages would not have been awarded under an unfair business practice claim, punitive damages would not have been justifiable, and no viable contract claim against Ryan, distinct from the organizations that employed Ryan, would have been successful. The extrinsic fraudulent and mistaken actions prevented Ryan from presenting his case in a fair and unbiased environment.

42.     Neither Ryan nor his attorney could reasonably have stemmed the tide of extrinsic fraud and mistake permitted by the trial court, despite numerous attempts to do so. Additionally, the post-trial finding of the SEC that Ryan did not know the true nature of the purported hedge fund, and the Ohio and Florida prosecutors' determination that Ryan was a victim, not a perpetrator, did not exist at the time of the trial.

43.     As a result, Ryan is entitled to have the judgments obtained by each of the Underlying Plaintiffs vacated.

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

## SECOND CAUSE OF ACTION

### TO ENJOIN EXECUTION ON JUDGMENTS RECEIVED IN CONSOLIDATED ACTIONS

### (Against All Defendants)

44.     Ryan incorporates herein by this reference each and every allegation contained in paragraphs 1-42, above.

45.     As a result, Ryan is entitled to have this Court enjoin each of the Underlying Plaintiffs and their respective agents and employees from enforcing any aspect of the judgments and liens they obtained in the underlying action.

## THIRD CAUSE OF ACTION

### TO RECOVER FUNDS RECEIVED FROM PLAINTIFF BY VIRTUE OF JUDGMENTS ON CONSOLIDATED ACTIONS

### (Against All Defendants)

46.     Ryan incorporates herein by this reference each and every allegation contained in paragraphs 1-42, above

47.     As a result, Ryan is entitled to an order directing each Underlying Plaintiff to pay back to Ryan any and all monies or other property they have obtained as a result of the judgments obtained by each of them.

WHEREFORE, PLAINTIFF prays judgment as follows:

1.     On the First Cause of Action for an order vacating each judgment obtained by Nicklos Ciolino, Charles Ciolino, Robert Aguilar, Stephen Daniele, Daniel DeLorenzi;

2.     On the Second Cause of Action for an order enjoining Nicklos Ciolino, Charles Ciolino, Robert Aguilar, Stephen Daniele, Daniel DeLorenzi, each of them and anyone acting for them, from taking any action to enforce the judgments and liens they obtained in the underlying action;

3.     On the Third Cause of Action for a judgment against Nicklos Ciolino, Charles Ciolino, Robert Aguilar, Stephen Daniele, Daniel DeLorenzi, respectively. for the value of any monies taken from Ryan by enforcement of their respective judgments or

61014.01/412955.DOC                         -12-
COMPLAINT IN EQUITY

liens obtained in the underlying action, with interest thereon at the legal rate;

    4.    For attorneys fees to the extent permitted by law;

    5.    For all recoverable costs of suit; and

    6.    For such other and further relief as the Court may deem just and proper.

Dated: July 1, 2009.

MBV LAW LLP

By _____
David J. Brown
Attorneys for Plaintiff John A. Ryan

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

61014.01/412955.DOC -13-
COMPLAINT IN EQUITY

# EXHIBIT D

# LAW OFFICE OF MICHAEL D. LIBERTY



1290 Howard Ave., Suite 303
Burlingame, California 94010
Telephone: (650) 685-8085
Facsimile: (650) 685-8086

January 5, 2010

**VIA FACSIMILE ONLY**
**(415) 989-5143**

David Brown
MBV Law LLP
855 Front Street, Suite D
San Rafael, CA 94901

       Re: <u>John Ryan's Bankruptcy Case</u>
          Bankruptcy Case No. 05-32933; Adversary Pro. No. 09-3134

Dear Mr. Brown:

     Now that John Ryan's house is selling, and Judge Montali has ordered him to vacate, which I understand was yesterday, we would urge you to dismiss your action.

     Your action has no basis in law or fact, and exposes your firm to considerable sanctions and my attorney fees for being forced to bring a motion for summary judgment.

     Judge Montali has already indicated your action belongs to the bankruptcy estate, and I believe I can show res judicata and/or collateral estoppel apply.

     If we are forced to file a motion for summary judgment, we will also file a motion for our attorney fees against your firm, under local rules.

     Kindly confirm Mr. Ryan will drop his case. Should I not hear from you by Monday, January 11, 2010, that you will dismiss, I will take further, appropriate action consistent with the contents of this letter.

                Very truly yours,

                Michael D. Liberty

MDL:
cc:    clients

# EXHIBIT E



# M B V | L A W
### LLP

## ATTORNEYS AT LAW

January 11, 2010

<u>**VIA FACSIMILE – 650 685-8086**</u>

Michael D. Liberty, Esq.
Law Office of Michael D. Liberty
1290 Howard Avenue, Suite 303
Burlingame, California 94010

      Re:    *John Ryan v. Ciolino, et al.*

Dear Mr. Liberty:

      I respond to your letter of January 5, 2010. Your letter lacks a basis in law.

      As a result of extrinsic fraud and mistake, various judgments were entered against Mr. Ryan. The judgments are in large part non-dischargeable. As you know, Mr. Ryan is presently in a Chapter 7 bankruptcy.

      You make two arguments in your letter: (1) the trustee alone controls the cause of action; and (2) collateral estoppel and res judicata apply. Neither argument is correct.

      While the trustee may have standing to bring the cause of action, so too does Mr. Ryan. Generally, a Chapter 7 debtor lacks standing to object to claims. This is logical since at the close of the bankruptcy the debtor emerges with a fresh start free from debt and thus is not a party in interest under 11 U.S.C. Section 502. However, where a debtor does not emerge with a totally clean slate, the rule does not apply.

      Where the debtor has non-dischargeable debts, the debtor possesses standing to object to claims. Just like any creditor, because the debtor has an interest in how the assets are distributed, he has a right to act. Bringing a suit in equity is, in practice, a method of objecting to a claim based on a non-dischargeable judgment.

      *In re Wellman*, 378 B.R. 416, 1 n.5 (9th Cir. BAP 2007) the court held that "[s]tanding to object to claims exists, however, when there is a sufficient possibility of a surplus to give the chapter 7 debtor a pecuniary interest or when the claim involved will not be discharged" (citing *In re Health*, 331 B.R. 424, 429 (9th Cir. BAP 2005)).

Case: 09-03134   Doc# 32   Filed: 07/09/10   Entered: 07/09/10 16:43:34   Page 27 of 29

This point is neither complicated nor obscure. *McGuirl v. White*, 86 F.3d 1232, 1235-36 (D.C.Cir.1996) ("The question in this bankruptcy case is whether non-discharged debtors with an insolvent estate have standing to challenge the trustee's application for administrative expenses. Because reducing the administrative expense award will directly reduce the debtors' liability on their non-discharged debts, we hold that the debtors have a sufficient interest to warrant standing."); *see also Mulligan v. Sobiech*, 131 B.R. 917, 920 (S.D.N.Y. 1991) (citing 11 U.S.C. § 502, which states claims are deemed allowed unless objected to by a "party in interest"); *In re Moss*, 320 B.R. 143 (Bankr. E.D. Mich. 2005) (allowing chapter 7 debtor to object to trustee's fee application where debtor had non-dischargeable debts under 11 U.S.C. § 523(a)(1), (a)(8)(C)); *In re Manshul Construction Corp.*, 223 B.R. 428 (Bankr. S.D. N.Y. 1998) (debtor lacks standing where debtor lacks non-dischargeable debts).

Mr. Ryan has standing to bring the complaint in equity to undo the judgments entered against him based on extrinsic fraud or mistake because those judgments will pass through the bankruptcy and beleaguer Mr. Ryan when he emerges from the Chapter 7.

Your second contention is that collateral estoppel and res judicata bar Mr. Ryan's suit. The whole purpose of a complaint in equity is to correct extrinsic fraud and mistake that occurred at trial. It is usual and appropriate to bring such an action after other avenues of attack have been unsuccessful. Neither collateral estoppel nor res judicata bar the action.

> A judgment on the merits that is not void on its face and subject to collateral attack is generally protected by the doctrine of res judicata after the time for ordinary direct attack has passed. But sometimes the judgment is obtained under circumstances of extrinsic fraud or mistake that prevent a fair adversary hearing, and the aggrieved party does not have a reasonable opportunity to litigate his or her claim or defense. Such a judgment is not entitled to the usual conclusive effect, and equitable relief is allowed after the time for appeal, new trial, or other statutory means of review has expired.

8 Witkin, Cal. Proc. 5th, Attack on Judgment in Trial Court § 215, p. 823 (2008) (citations omitted).

Mr. Ryan has standing to bring his action, and the very nature of his action dispels the argument that collateral estoppel or res judicata operate as a bar.

Very truly yours,

*David Brown* /scp

David J. Brown

DJB:evm
61014.01/422830.DOC

# MEMORY TRANSMISSION REPORT

```
TIME       : JAN-11-2010  14:57
TEL NUMBER : +4159895143
NAME       : MBV LAW?
```

| | | |
|---|---|---|
| FILE NUMBER | : | 164 |
| DATE | : | JAN-11 14:56 |
| TO | : | 916506858086 |
| DOCUMENT PAGES | : | 003 |
| START TIME | : | JAN-11 14:56 |
| END TIME | : | JAN-11 14:57 |
| SENT PAGES | : | 003 |
| STATUS | : | OK |

FILE NUMBER    : 164          \*\*\* SUCCESSFUL TX NOTICE \*\*\*

## M B V   L A W   L L P
### ATTORNEYS AT LAW
855 FRONT STREET
SAN FRANCISCO, CA 94111-1415
TELEPHONE 415 • 781 • 4400
FACSIMILE 415 • 989 • 5143
FACSIMILE 415 • 433 • 8565

## FACSIMILE TRANSMISSION SHEET

| To: | Company: | Fax: | Tel: |
|---|---|---|---|
| Michael D. Liberty, Esq. | Law Office of Michael D. Liberty | (650) 685-8086 | (650) 685-8085 |

**From:** David J. Brown
**Date:** January 11, 2010
**Re:** *John Ryan v. Ciolino, et al.*
**Total Number of Pages:** 3

Original will not follow.     Original will follow by:
                              U.S. Mail      Messenger          Federal Express

### ADDITIONAL COMMENTS:

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL AND MAY BE PRIVILEGED, AND IS INTENDED ONLY FOR THE RECIPIENT(S) NAMED ABOVE. ANY DISSEMINATION OR DISTRIBUTION OF THIS COMMUNICATION TO ANY PERSON OTHER THAN AN INTENDED RECIPIENT IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL TO US AT THE ABOVE ADDRESS VIA UNITED STATES MAIL. THANK YOU.