1   DAVID J. BROWN, ESQ. (SBN 56628)
    (davidbrown@mbvlaw.com)
2   MBV LAW LLP
    855 Front Street
3   San Francisco, California 94111
    Telephone:    415-781-4400
4   Facsimile:    415-989-5143

5   Attorneys for Plaintiff John A. Ryan

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  In Re                               CASE NO. 05-32933 Chapter 7

13  JOHN A. RYAN and DANIELLE T.
    RYAN,
14
                        Debtors,
15

16  JOHN A. RYAN, an individual,        ADVERSARY NO. 09-03134

17                        Plaintiff,    PLAINTIFF'S RESPONSE TO
                                        DEFENDANTS' MOTION FOR SUMMARY
18      v.                              JUDGMENT

19  NICKLOS CIOLINO; CHARLES            DATE: AUGUST 6, 2010
    CIOLINO; ROBERT AGUILAR;            TIME: 11:00 AM
20  STEPHEN DANIELE; DANIEL             PLACE: DEPARTMENT 22
    DELORENZI; ALMA CIOLINO; EVELYN     JUDGE: MONTALI
21  CIOLINO; PRISCILLA AGUILAR;
    THERESA DANIELE; and DOES 1 to 25,
22  inclusive,

23                        Defendants.

24

25

26

27

28

MBV LAW LLP
855 Front Street
SAN FRANCISCO CA 94111

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF POINTS ........................................................... 1

II. FACTS AND ARGUMENTS ................................................................................... 2

 A. This Court Now Sits As If It Were A State Trial Court ............................ 2

 B. The Nature of the Equitable Relief Being Sought .................................... 2

  1. The Rules Regarding Newly Discovered
   Evidence Apply Here ....................................................... 6

  2. The Elements of the Claims Brought in This Action .................... 6

 C. Ryan's Case Has Sufficient Merit To Permit It to Go To Trial ............... 7

 D. The Newly Discovered Facts .................................................................. 7

 E. Other Extrinsic Mistakes Contributed to the Unfairness
  of the Trial ................................................................................................ 9

 F. These Defenses Did Not Exist or Otherwise Were
  Unavailable to Mr. Ryan at the Time of His Trial ................................. 12

 G. A Newly Formed Expert Opinion Can Form the
  Basis for Granting a New Trial .............................................................. 13

 H. The Stage on Which the Scene Was Set ................................................ 13

  1. The "Ponzi Scheme by Ryan" Theme Sells
   and Wins (Even Though It Arose From the SEC
   Complaint and Was Later Refuted by the SEC) ...................... 13

 I. Mr. Ryan Brought This Action in a Reasonable Time
  After His Other Attempts to Correct the Record Had
  Failed, and This Court Found the Judgments to Be
  Non-Dischargeable .................................................................................. 20

 J. The Jury Instructions Were A Mess – This Court Said
  It Was Glad It Was Not on The Jury with Those
  Instructions – The Jurors Agreed About the
  Instructions – So Did The Trial Court .................................................... 21

 K. Extrinsic Fraud or Mistake Constitute Circumstances
  Which Deprive a Litigant of His Full Day in Court .............................. 22

 L. The Court Should Deny or Continue the Motion to Allow
  Plaintiff to Conduct Discovery Under Rule 56(f). ................................ 23

III. CONCLUSION ................................................................................................. 25

M B V L A W L L P
855 Front Street
SAN FRANCISCO CA 94111

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ADV. No. 09-03134

Case: 09-03134 Doc# 33 Filed: 07/09/10 Entered: 07/09/10 16:44:57 Page 2 of 29

# TABLE OF AUTHORITIES

## STATE CASES

*Aldrich v. San Fernando Valley Lumber Co.,*
170 Cal.App.3d 725 (1985) ............................................................................................2, 6

*Anderson v. Howland,*
3 Cal.App.3d 380 (1970) ............................................................................................13, 24

*City and County of San Francisco v. Cartagena,*
35 Cal.App.4th 1061 (1995) ........................................................................................1, 22

*Estate of Sanders,*
40 Cal.3d 607 (1985) ......................................................................................................5

*Evry v. Tremble,*
154 Cal.App.2d 444 (1957) ..............................................................................................6

*Horowitz v. Noble,*
79 Cal.App.3d 120 (1978) ................................................................................................6

*In re Marriage of Alexander,*
212 Cal.App.3d 677 (1989) ............................................................................................22

*In re Marriage of Baltins,*
212 Cal.App3d 66 (1989) ..................................................................................................3

*In re Marriage of Brennan,*
124 Cal.App.3d 598 (1981) ..............................................................................................3

*In re Marriage of Brockman,*
194 Cal.App.3d 1035 (1987) ............................................................................................5

*In re Marriage of Coffin,*
63 Cal.App.3d 139 (1976) ................................................................................................2

*In re Marriage of Grissom,*
30 Cal.App.4th 40 (1994) ..................................................................................................5

*In re Marriage of Modnick,*
33 Cal.3d 897 (1983) ........................................................................................................5

*In re Marriage of Park,*
27 Cal.3d 337 (1980) ........................................................................................................2

*In re Marriage of Stevenot,*
154 Cal.App.3d 1051 (1984) ........................................................................................4, 22

*Lostritto v. Southern Pacific Transportation Company,*
73 Cal.App.3d 737 (1977) ................................................................................................11

*McArdle Real Estate Co. v. McGowan,*
109 N. J. L. 595 (1932) ......................................................................................................5

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO, CA 94111

Case: 09-03134    Doc# 33    Filed: 07/09/10    Entered: 07/09/10 16:44:37    Page 3 of 29

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adv. No. 09-03134

*Munoz v. Lopez,*
    275 Cal.App.2d 178 (1969) ........................................................................................2

*Olivera v. Grace,*
    19 Cal.2d 570 (1942) ...............................................................................................5

*Rappleyea v. Campbell,*
    8 Cal.4th 975 (1994) ...............................................................................................6

*Slemons v. Paterson,*
    14 Cal.2d 612, 96 P.2d 125 (1939) ..........................................................................6

## STATE STATUTES

California Code of Civil Procedure
    § 484.100 ................................................................................................................10

## FEDERAL STATUTES

Federal Rules of Civil Procedure
    Rule 56(f) ...........................................................................................................1, 23
    Rule 60(b) ................................................................................................................4

## OTHER AUTHORITIES

Fraudulent Judgments: *Abolishing the Extrinsic-Intrinsic Distinction*
    (1981) 12 Pacific L.J. 1013 .....................................................................................4, 5

Smallwood, *Vacating Judgments in California: Time to Abolish the Extrinsic Fraud Rule*
    (1985) 13 Western St.U.L.Rev. 105-127 ....................................................................4

Comment, *Seeking More Equitable Relief from Fraudulent Judgments: Abolishing the Extrinsic-Intrinsic Distinction*
    (1981) 12 Pacific L.J. 1013 FN6 ...............................................................................4

The Restatement Second of Judgments (1982) ...............................................................4

8 Witkin, California Proc. (4th ed.), Attack on Judgment in Trial Court § 31 .................6

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

Case: 09-03134     Doc# 33     Filed: 07/09/10     Entered: 07/09/10 16:44:37     Page 4 of 29

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ADV. No. 09-03134

M B V   L A W   L L P
855 Front STREET
SAN FRANCISCO  CA 94111

# I.     <u>INTRODUCTION AND SUMMARY OF POINTS</u>

Defendants assert that Plaintiff Ryan ("Mr. Ryan") lacks standing to assert his equitable claims based on the notion that they belong solely to his bankruptcy estate. Because this court has held that the underlying state court judgments against Mr. Ryan are non-dischargeable, he has standing to assert his claims which if successful will materially directly affect his post discharge financial situation.

Defendants also assert that Mr. Ryan's claims are barred by the doctrines of *res judicata* and collateral estoppel, based on the state court judgments and the appeal and motions following those state court judgments. Defendants miss the mark because by Mr. Ryan successfully asserting and ultimately proving his right to the equitable relief he now seeks, *res judicata* and collateral estoppel provide no defense to such equitable relief. "Res judicata is one of the oldest and least flexible doctrines in American jurisprudence. It is also one of the most important." [Citation omitted] Of course, there are a few rare instances in which res judicata is not applied, such as when a final judgment was obtained by extrinsic fraud or mistake. *City and County of San Francisco v. Cartagena*, 35 Cal.App.4th 1061, 1066 (1995). The same reasoning applies to collateral estoppel. There has been no prior adjudication on the merits of whether or not because of extrinsic mistake or fraud, Mr. Ryan is entitled to a vacation of the judgments or other modification of them.

Mr. Ryan believes that he has provided sufficient facts and argument to defeat the summary judgment motion which is framed on faulty legal premises and no facts other than the fact that Mr. Ryan filed bankruptcy and a trustee was appointed, and the current defendants won the underlying case which Mr. Ryan now attacks. The defendants' motion ignores totally the law allowing this case, and the facts asserted by Mr. Ryan that support his claim. They do not satisfy their burden for receiving a summery judgment.

However, consistent with the authorities cited below, Mr. Ryan believes that he reasonably could enhance his position further with some discovery. To that end, below Mr. Ryan asks for certain limited discovery under Rule 56(f).

---

1

Case: 09-03134   Doc# 33   Filed: 07/09/10   Entered: 07/09/10 16:44:37   Page 5 of 29

M B V   L A W   L L P
855 Front STREET
SAN FRANCISCO CA 94111

## II.     FACTS AND ARGUMENTS

### A.     This Court Now Sits As If It Were A State Trial Court

At the non-dischargeabilty hearing before this court, this court concluded that it did not have the power to undo what happened in the state court.  In short, it felt it was bound with the final record as it then stood.  It seemed to feel that any remedy to fix the underlying problem, if there was one, belonged to the state court process.  This present case brought in state court by Mr. Ryan, and now before this court by the defendants removal of it, is one of the possible, albeit not well known, remedies available to Mr. Ryan through the state court process.  It allows him to challenge the underlying result, even after losing his appeal.  The limitation that this court felt was on it at the non-dischargeability hearing is not present here.  As this court noted the other day, this case ultimately might better be sent back to the state court for handling because of its unusual nature and reliance on California law.  But right now, unless this court wants to send this case with the current motion pending back to state court, this court needs to look at California law and process regarding this recognized independent equitable claims being asserted by Mr. Ryan.

### B.     The Nature of the Equitable Relief Being Sought

"A final judgment may be set aside by a court if it has been established that extrinsic factors have prevented one party to the litigation from presenting his or her case. [Citation.] The grounds for such equitable relief are commonly stated as being extrinsic fraud or mistake. However, *those terms are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing.*  It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense. [Citations.]" *In re Marriage of Park*, 27 Cal.3d 337, 342 (1980) emphasis added; *In re Marriage of Coffin*, 63 Cal.App.3d 139, 149 (1976); *Munoz v. Lopez*, 275 Cal.App.2d 178, 181 (1969).

Trial courts have that inherent equitable power, apart from any other available statutory authority, "to vacate a judgment obtained under circumstances of extrinsic fraud or mistake" *Aldrich v. San Fernando Valley Lumber Co.*, 170 Cal.App.3d 725, 735-36 (1985).

This power can be exercised after the time to take other action has expired and

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Adv. No. 09-03134

independent of the results of the trial, appeal of the trial result or other statutorily permitted attacks on the trial result.  A trial court always has the inherent power to set aside a judgment where it was obtained through fraud, mistake, or accident, or where the defendant in the action, having valid legal defense on the merits, was prevented in any manner from maintaining it by fraud, mistake, or accident, and there has been no negligence, laches, or other fault on his or her part.  A court may set aside such a judgment in an independent action in equity or in a motion in the original action.  *In re Marriage of Baltins*, 212 Cal.App3d 66, 81 (1989).[1]

Interestingly, California is moving toward eliminating the distinction between extrinsic mistake and fraud vs. intrinsic mistake and fraud to look at the overall equities of the situation presented by each case.  *In Marriage of Baltins*, s*upra*, at 82-83.  We believe that if the older extrinsic mistake approach is used here, Mr. Ryan prevails.  However, we assert that if necessary, this evolving approach suggested in the *Marriage of Baltins* case should be applied.  Either way, Mr. Ryan should have his day in court fully to prove that he should receive a new day in court on the underlying action, or have enforcement of the judgments curtailed as appropriate—in this instance by effectively eliminating the basis for this court making them non-dischargeable.

The trend away from the seemingly somewhat more strict extrinsic v. intrinsic distinction is stated in depth within *In Marriage of Baltins*, s*upra*, at 82-83.  There the court noted:

> While it is relatively simple to state the general principles, it is a more difficult task to determine whether the facts which have been shown constitute "extrinsic" fraud, which will justify the granting of relief, or, as urged by Husband, "intrinsic" fraud, which will not. *In re Marriage of Brennan*, 124 Cal.App.3d 598, 603, (1981) Justice King, speaking for Division Five of this District, has called this distinction "the most repetitively troublesome issue in the family law field over the last 40

---

[1]    While this type of action is most often used to challenge default judgments, it is used to attack trial results when the standards for it are satisfied.

years...." *In re Marriage of Stevenot, supra,* 154 Cal.App.3d at p. 1056 And Judge Donald E. Smallwood has made a persuasive case for abolishing the extrinsic fraud rule. (See Smallwood, *Vacating Judgments in California: Time to Abolish the Extrinsic Fraud Rule* (1985) 13 Western St.U.L.Rev. 105-127 [hereafter cited as Smallwood]; see also Comment, *Seeking More Equitable Relief from Fraudulent Judgments: Abolishing the Extrinsic-Intrinsic Distinction* (1981) 12 Pacific L.J. 1013.) [FN6] The Restatement Second of Judgments (1982) does not distinguish between extrinsic and intrinsic fraud (§ 68). The distinction has also been abandoned in rule 60(b) of the Federal Rules of Civil Procedure (28 U.S.C.), which permits a court to relieve a party from a final judgment by motion made within a reasonable time not to exceed one year for "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... [or] (3) fraud (*whether heretofore denominated intrinsic or extrinsic*), misrepresentation, or other misconduct of an adverse party...." (Emphasis added.) Under rule 60(b), no time limit is imposed when an independent action is based on the ground of fraud on the court.

FN6. As an alternative to the extrinsic-intrinsic fraud test, Judge Smallwood suggests that "[t]he Court should examine the facts and circumstances in each case, measuring or testing them against the following: [¶] 1. Did the conduct, or the facts or circumstances complained of, prevent a trial of any material issue in the case or was the injured party prevented from receiving a fair adversary hearing? [¶] 2. If the conduct complained of was perjury or the introduction of false evidence in the original trial, is the proof of such fact clear and convincing, and is there a showing that the injured party

Case: 09-03134    Doc# 33    Filed: 07/09/10    Entered: 07/09/10 16:44:37    Page 8 of 29

M B V  L A W  L L P
855 Front Street
SAN FRANCISCO CA 94111

was diligent and reasonable in his [or her] efforts to ascertain the truth at the original proceeding? [¶] 3. Was the injured party free from any participation in the conduct? If not, was the conduct of the injured party excusable? [¶] 4. Has the injured party delayed the bringing of action to a point where such delay constitutes a waiver or estoppel? [¶] 5. Would the result in the trial of the original action have ben [*sic*] substantially different, but for the conduct or facts and circumstances complained of? [¶] 6. Is there prejudice to the other party?" (Smallwood, *supra,* 13 Western St.U.L.Rev. at pp. 124-125, fns. omitted.)

Although California courts continue to rely primarily on the extrinsic-intrinsic fraud analysis, they have also recognized that "[e]xtrinsic fraud is a broad concept that 'tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing.' [Citation.]" (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905, 191 Cal.Rptr. 629, 663 P.2d 187; *Estate of Sanders* (1985) 40 Cal.3d 607, 614, 221 Cal.Rptr. 432, 710 P.2d 232; cf. *In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1047, 240 Cal.Rptr. 96.)

In asserting an independent action, a different result does not have to be demonstrated with certainty. "The requirement that the complaint allege a meritorious case does not require an absolute guarantee of victory. (*Cf. McArdle Real Estate Co. v. McGowan,* 109 N. J. L. 595 [163 Atl. 24].) It is enough if the complaint presents facts from which it can be ascertained that the plaintiff has a sufficiently meritorious claim to entitle him to a trial of the issue at a proper adversary proceeding." *Olivera v. Grace,* 19 Cal.3d 570, 579 (1942); *In re Marriage of Grissom,* 30 Cal.App.4th 40, 51-52 (1994) [Husband appealed from trial court's decision to set aside a judgment of dissolution. Wife offers declaration that she would not have signed a settlement agreement (which was incorporated into the judgment of dissolution) if husband had told her that

it was a final settlement agreement.]  The fact that the defense may be difficult to prove is not determinative.  *Evry v. Tremble*, 154 Cal.App.2d 444, 448-49 (1957)

### 1.     The Rules Regarding Newly Discovered Evidence Apply Here

"A new trial may be granted based on newly discovered evidence that is material for the party making the application for new trial and that the party could not, with reasonable diligence, have discovered and produced at trial. [Code Civ. Proc., § 657(4)] Newly discovered evidence is looked upon with distrust and disfavor, and a strong showing of the essential requirements must be made in order to support a motion for new trial on this ground. [*Horowitz v. Noble*, 79 Cal.App.3d 120, 144 Cal. Rptr. 710 (1st Dist. 1978); 8 Witkin, California Proc. (4th ed.), Attack on Judgment in Trial Court § 31] The essential elements that must be established are: (1) that the evidence is newly discovered; (2) that reasonable diligence has been exercised in its discovery and production; and (3) that the evidence is material to the moving party's case. [*Slemons v. Paterson*, 14 Cal.2d 612, 96 P.2d 125 (1939)] In establishing the materiality of newly discovered evidence, the moving party must show that the new evidence would likely have produced a different result."

California Civil Practice Procedure, Chapter 29. Attacking the Judgment, § 29:6. Newly discovered evidence.

### 2.     The Elements of the Claims Brought in This Action

"[T]hree elements must be satisfied to set aside a judgment based upon extrinsic mistake: first the defaulted party must show that it has a meritorious case; secondly it must articulate a satisfactory excuse for not presenting a defense to the original action; and lastly it must demonstrate that it was diligent in seeking to set aside the default once it had been discovered." *Aldrich v. San Fernando Valley Lumber Co.*, 170 Cal.App.3d 725, 738 (1985); *see also Rappleyea v. Campbell*, 8 Cal.4th 975, 981-82 (1994).

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO   CA 94111

## C.     <u>Ryan's Case Has Sufficient Merit To Permit It to Go To Trial</u>

The extrinsic mistakes in Mr. Ryan's case include highly materials facts that did not come into existence until well after Mr. Ryan's trial. Because they were later in coming into being, and that timing was not a result of some conduct of Mr. Ryan, he cannot be faulted for not finding and having those facts available to him at the underlying trial.

The newly discovered facts likely would have swung the result in Mr. Ryan's favor with respect to the intentional tort claims, if not across the board. The culmination of these facts, finalized in the most recent actions in Florida, have lead to a strong expert opinion that had they existed and been available at the trial, a different result more favorable to Mr. Ryan would have occurred. "[I]t is my opinion that were the facts recited in paragraph 4 subdivision (a) through (c) been available to Mr. Ryan and myself at trial, it is likely there would have been a different and more favorable result for Mr. Ryan at trial." Declaration of Louis Franecke at ¶ 6 (filed concurrently herewith).

Mr. Ryan himself, who fully participated at his trial which led to the judgments now being challenged in this equitable action, holds that same opinion. Ryan Declaration filed concurrently herewith at ¶¶ 8-10.

These important facts by their nature were not developed at trial time because the processes by which they came to be took years longer to develop and come to fruition. All of them cut strongly in favor of Mr. Ryan in terms of whether or not his actions were of an intentional tort with malice. They cut directly into the theme pressed by the underlying plaintiffs and their "evidence." Most importantly they cut directly into what their expert opined when he said that in his view, Mr. Ryan was running a Ponzi scheme. Also they provide evidence consistent with Mr. Ryan's statements of what happened which because of a lack of strong independent evidence at the time of trial, which now exists, could not carry the day. Ryan Declaration at ¶¶ 12-19, where Mr. Ryan testifies that he was an innocent pawn/victim, not a conspiring intentional wrongdoer.

## D.     <u>The Newly Discovered Facts</u>

The facts:

(1) The Securities and Exchange Commission ("SEC") after first asserting in its complaint that Ryan had run a Ponzi scheme of his own and in conjunction with Von Cummings, and Cummings' company, called Paramount Financial Partners, later found that:

> Between January 1, 2001 and July 5, 2001, Ryan was associated with Paramount Financial, a purported hedge fund that was falsely represented to investors as generating large returns for clients. Unbeknownst to Ryan at the time, Paramount Financial was in fact not a hedge fund and did not buy or sell securities for clients' accounts.[2]

(2) The SEC began its investigation at some point prior to December 6, 2001,[3] and concluded its investigation and administrative proceedings at the earliest on October 14, 2004.[4] Justice Department prosecutors in Ohio began their investigation prior to when they filed an indictment against Von Cummings on February 16, 2006,[5] and concluded the case in July of 2008 with a plea bargained sentence of Von Cummings for his Ponzi scheme.[6] Thereafter they brought no criminal action against Mr. Ryan in connection with Von Cummings activities or his own.[7]

(3) Cummings accepted the plea bargain, complete with a 40-month jail sentence, and submitted a memorandum regarding his sentencing in which he admitted that he was the perpetrator of the fraud and assumed responsibility for what had happened to his victims.[8]

(4) The State of Florida prosecutors completed their investigation of an alleged fraudulent scheme by which one of the underlying plaintiffs, Stephen Daniele ("Mr. Daniele"), had been bilked. Those prosecutors concluded that Mr. Ryan was a victim, not a perpetrator, and

---

[2]   Ryan Declaration ¶ 7, Ex. 3, SEC Letter and Findings.

[3]   This is the date Mr. Ryan was initially interviewed by the SEC. Ryan Declaration ¶ 22.

[4]   Ryan Declaration ¶ 7, Ex. 3, SEC Letter and Findings.

[5]   Request for Judicial Notice ("RJN") ¶ 2, Ex. 1, Cummings Indictment.

[6]   RJN ¶ 1, Ex. 2, Cummings Plea, Ex. 3, Cummings Statement re Sentencing, Ex. 4, Cummings Judgment.

[7]   Ryan Declaration ¶ 6.

[8]   RJN ¶¶ 3-5, Ex. 2, Ex. 3, pp. 4-5, Ex. 4.

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO   CA 94111

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

thanked him for his invaluable help in seeing justice was done.  Declaration of Margery J. Lexa and Supplemental Declaration of Margery J. Lexa, filed concurrently herewith, a Florida prosecutor.  Among the things Ms. Lexa says are:

(a) Mr. Ryan's "conduct was examined in detail in connection with the above-described investigation and this office concluded that Mr. Ryan was a victim of the" fraud, (Lexa Declaration ¶ 9.)

(b) Mr. Ryan "was not charged nor considered a participant with any of the aforementioned criminal activity.  *  *  *  Testimony provide by Mr. DeFalco at Mr. Noel's trial was the he and his other co-defendants had conspired to dupe Mr. Ryan and others into paying the up-front advance fees."  (Lexa Declaration ¶ 11.)

(c) That the time from the start of the investigation until the conclusion when the last criminal was convicted took 10 years and extensive use of resources.  It did not end until February of 2010.  (Lexa Declaration ¶¶ 13-16.)

(d) That $100,000 of the $300,000 that was involved in the crimes she prosecuted came from Mr. Daniele via Mr. Ryan.  (Supplemental Lexa Declaration ¶ 3.)

And (e), that the $300,000 was intended to fund a letter of credit in favor of Paramount Financial Partners and Von C. Cummings.  (Supplemental Lexa Declaration ¶ 2.)

## E.     Other Extrinsic Mistakes Contributed to the Unfairness of the Trial

The importance of the need for the newly discovered facts is heightened by some extrinsic mistakes that demonstrate the importance of the new facts being needed for a fair trial.  There was an atmosphere at trial by a set of rulings by the trial court that permitted the underlying plaintiffs to present a case that had Mr. Ryan convicted of running a Ponzi scheme with no hard proof, but by allegations referenced by witnesses as coming from a SEC complaint which the SEC itself later refuted.  That was powerful stuff.  The underlying plaintiffs' attorney in opening argument and closing argument concentrated his argument on the claim that Mr. Ryan had his own Ponzi scheme, one not ultimately found by the SEC, or Ohio federal prosecutors or the Florida state prosecutors.  Had those conclusions been reached at or prior to the time of Mr. Ryan's trial, a different outcome, particularly as to claims for punitive damages would likely

have resulted.

　　　　To make matters worse, the trial judge accepted reference to the writs of attachment obtained by the underlying plaintiffs. This ruling in violation of California Code of Civil Procedure Section 484.100 which prohibits such references at trial because of their prejudicial effect and placed the court's apparent acceptance and validation of the underlying plaintiffs' case before the jury.[9]

> The court's determinations under this chapter shall have no effect on the determination of any issues in the action other than issues relevant to proceedings under this chapter nor shall they affect the rights of the plaintiff or defendant in any other action arising out of the same claim of the plaintiff or defendant. The court's determinations under this chapter shall not be given in evidence nor referred to at the trial of any such action.  [CCP Section 484.100]

The testimony violating this section was:

> Q (By Mr. Liberty).　　You understood that I have or I had put liens on Mr. Ryan's house on behalf of my clients?
>
> A (By Mr. Stewart).　　Yes. What I had done, I found out there were attachments or liens on John's house, and I thought, wow, if -- because at this point, people started having rumors that John had done a Ponzi scheme, or these were -- these allegations John was involved with this Von Cummings, and they swindled everybody. So when I found out that Mr. Liberty had all these liens on John's home, . . . .
>
> 　　　　　　*　　　*　　　*
>
> I would ask George Cory to do it and George said: "Michael Liberty, I know this guy. If he's already done it, he's got a blue print, he would be the quickest way if I was to do it."

---

[9]　　This egregious occurrence is an extrinsic mistake by nature because of its severity, and under the developing theory of equitable actions to vacate judgments should play a role, whether objected to or not at trial, and whether or not it was raised on appeal.

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO  CA 94111

My whole thought was, this man, this attorney, Michael Liberty, went

out and got these secured liens. I don't know how you did it, why you

did it, who you did -- how or anything. You did it.

*     *     *

Q.   Who did you think on whose behalf I obtained these liens?

A.   I don't have them. Nick Ciolino -- somebody else -- Ciolino,

DeLorenzi -- I don't know. There are five of them I brought to you this

day, I want to do this.[10]

After this passage, there followed a question by the underlying plaintiffs' counsel asking

Mr. Stewart if he knew that the Court had ordered the attachments, to which the Court blocked an

answer. But by then, the question itself essentially pointed to the cat that was out of the bag.

When coupled with the claims that Mr. Ryan ran a Ponzi scheme based on several

witnesses review of the SEC Complaint, these collective events cemented the high level of

impact the references to the SEC Complaint had to Mr. Ryan's prejudice with no facts

independent of Mr. Ryan to counter that impact.

The case of *Lostritto v. Southern Pacific Transportation Company*, 73 Cal.App.3d 737,

743-44 (1977) demonstrates how newly discovered evidence can justify vacating a result and

giving the initial losing party a new day in court. In *Lostritto* the court said:

The jury by 10 to 2 vote answered affirmatively the special interrogatory

as to willful misconduct on the part of defendant. Following judgment,

the court granted a motion for new trial; in respect of willful misconduct,

the judge noted in his grounds and specifications that there was newly

discovered material evidence which could not with ordinary diligence

have been discovered, and that this evidence is material to the issue of

willful misconduct of the plaintiff, and that it is reasonably probable that

there would have been a different result. The new evidence consists of

---

[10]     Ryan Declaration ¶ 2, Ex. 1, Trial Transcript, 1319:5-1323:5.

M B V   L A W   L L P
855  Front  Street
SAN FRANCISCO  CA  94111

the declarations of two young men that plaintiff was warned by them and
by others, immediately before the dive, that the water was not deep
enough and that he had replied that he had been diving all day. This
would contradict plaintiff's testimony that he was not warned not to dive
and that he did not know the depth of the river. Perhaps, as plaintiff
argues, the witnesses did not have sufficient information about the depth
of the water at the exact place where the dive would occur to give an
informed warning; although in fact it seems they were right. But the fact
(we assume the witnesses' veracity for present purposes) that they did
give a warning from their position in the water and that plaintiff chose to
disregard it, is sufficient to support the grant.

**F.    These Defenses Did Not Exist or Otherwise Were Unavailable to Mr. Ryan at the Time of His Trial**

Neither the SEC, not the Ohio prosecutors, nor the Florida prosecutors had completed their respective work and finalized their efforts until well after Ryan's trial was concluded. Cummings as a practical matter was not available because he took the 5th Amendment at his deposition in the Mr. Ryan case and hence as a practical matter took himself out of play. He certainly was not undertaking to tell what had happened, or what, if any, Ryan's knowledge, lack of knowledge or involvement was in the matter, be it innocent or otherwise.

That these new facts are important can be seen with respect to a statement made by the underlying plaintiffs' attorney in his opening statement when he mocked what he predicted was Mr. Ryan's defense. Mr. Liberty said that one of Mr. Ryan's defenses was:

"Well, I [John Ryan] was defrauded by a guy name Von Cummings."
Von Cummings is a man out of Ohio that Mr. Ryan is going to try to pin
the blame on. He was the head of the east operation. Mr. Ryan was the
head of the west operation. "Okay. Well, how did Von Cummings defraud
you?" "Well, Von Cummings told me all this bad information that turned

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adv. No. 09-03134

out to be not true."[11]

The underlying plaintiffs claimed at trial that Mr. Ryan knew from the get-go that the investments were bogus. Their main proof of that was their references to the SEC Complaint that recited that Mr. Ryan was running a Ponzi scheme and the fact that information given to Mr. Ryan which he in turn gave to them was not true. See the trial transcript quotations below regarding Ponzi scheme assertions by the plaintiffs, their expert, their counsel and one other witness.

The post trial counter-evidence that has come into being and known to Mr. Ryan, did not exist at the time of the trial. It provides independent confirmation from highly reputable sources of what Mr. Ryan has said all along. He did not know of the fraud and Von Cummings was the culprit.

## G.  A Newly Formed Expert Opinion Can Form the Basis for Granting a New Trial

"[A] newly formed expert opinion is not as a matter of law insufficient to support an order granting a new trial." *Anderson v. Howland,* 3 Cal.App.3d 380, 385 (1970).

As noted above, Mr. Ryan's trial attorney opines that if he had at trial the counter-evidence of the SEC's exoneration of Mr. Ryan from being a knowing participant in the Paramount/Cummings fraud, Mr. Cummings plea bargain and conviction as the responsible criminal, and decisions by both Ohio and Florida prosecutors not to seek criminal sanctions against Mr. Ryan, the trial result would likely have been more favorable to Mr. Ryan. (Franecke Declaration ¶ 6.)

## H.  The Stage on Which the Scene Was Set

1.  The "Ponzi Scheme by Ryan" Theme Sells and Wins (Even Though It Arose From the SEC Complaint and Was Later Refuted by the SEC)

Throughout the trial, well "woodshedded" witnesses and plaintiffs' counsel managed repeatedly to sing the Ryan Ponzi Scheme song with little impediment by the trial court.

---

[11] Ryan Declaration ¶ 2, Ex. 1, 44:11-22.

13

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

**Plaintiffs' Opening Statement**

MR. LIBERTY:  There is such a thing called a ponzi scheme, and that's

what this is.  A ponzi scheme is best diagrammed by this triangle on this

blackboard. What that means, ladies and gentlemen, is the bad guys get

money from new investors, and they move up the chain. New investors

come in.  They move to level two.  New investors come in behind them,

they go to level one.  The bad guys at the top like Mr. Ryan take the

money and they pay off the guys who get up to the top. The problem is the

people that Mr. Ryan was paying off were his co-workers, his friends, and

his relatives.  By the time my guys get in, five of them, the money was

running out because they weren't coming up with enough new blood,

enough new suckers that Mr. Ryan suckered into this deal, and that's why

they're sitting here.[12]

                    *        *        *

The ponzi scheme started to unravel, but John Ryan started to chase the

money back. [13]

                    *        *        *

Mr. Ryan never advised them of the risks.  Never told them about the

security or lack of security, and certainly never disclosed that the grand

ponzi scheme that he was embarking on. [14]

To cement the Ponzi scheme theme, the opening statement also contained charged

argument about which Ryan's attorney's objection was overruled.

[MR. LIBERTY:] They all entered into oral agreements with Mr. Ryan for

the investment and for the return of their moneys, and he broke that oral

agreement.  They have sustained incredible damages.  He has engaged in

---

[12]     Ryan Declaration ¶ 2, Ex. 1, 43:9-44:2.

[13]     Ryan Declaration ¶ 2, Ex. 1, 49:1-3.

[14]     Ryan Declaration ¶ 2, Ex. 1, 52:26-53:4.

Case: 09-03134   Doc# 33   Filed: 07/09/10   Entered: 07/09/10 16:44:37   Page 18 of 29

M B V  L A W  L L P

855 front street
SAN FRANCISCO  CA 94111

1　　unfair business practices.  Our society just doesn't allow people to do that.

2　　We don't allow people like John Ryan to do this to these men and get

3　　away with it, and this is where justice is going to happen.

4　　MR. FRANECKE:  Objection, Your Honor.  This is not an opening statement. It's

5　　argument.

6　　THE COURT:  The objection is overruled. You may continue. [15]

7　　**Testimony of Plaintiffs' Expert Witness**

8　　Q.　You've had an opportunity to review the SEC Complaint?

9　　MR. FRANECKE:  Objection, Your Honor.

10　　THE COURT:  The objection is overruled.

11　　THE WITNESS:  That's correct. [16]

12　　　　　　　　　　　　*　　　*　　　*

13　　Q.　Have you formed any opinions in connection with reviewing

14　　documents and speaking to my clients about what other practices Mr.

15　　Ryan engaged in that you find were improper?

16　　A.　Well, in addition to the selling securities without a license to sales

17　　practices which, which either -- and I'm not trying to render a legal

18　　opinion, but at least according to, you know, what I understand from a

19　　SEC point of view, or from an Investment Advisor Act.

20　　MR. FRANECKE:  Objection, Your Honor.  Talking about the law.

21　　THE COURT:  Overruled.  It goes to the weight.

22　　THE WITNESS:  You know, he was positioning himself in such a way,

23　　both, as a broker, and as an advisor, and thirdly, from conversations and

24　　from the review of the SEC documentation, and it's my opinion there

25　　was a Ponzi scheme being transpired.[17]

26

27

28

---

[15]　Ryan Declaration ¶ 2, Ex. 1, 55:16-56:6.

[16]　Ryan Declaration ¶ 2, Ex. 1, 1218:21-1219:1.

[17]　Ryan Declaration ¶ 2, Ex. 1, 1225:1-22.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adv. No. 09-03134

Q.    You mentioned a Ponzi scheme.  What is your definition of a Ponzi

scheme?

A.    A Ponzi scheme is a true definition with by parties take in certain

amounts of money that are promising certain types of gains, and that

money based upon an investment that that investment never really

happens.  Funds are taken and the investment does not happen, and the

perpetrators of the Ponzi scheme induce other investors to come in by

paying them out some of the proceeds of the first people who put in the

money.  It's a pyramid scheme.

Q.    Is that what you understood happened to some of my clients'

moneys?

A.    Yes. [18]

**Plaintiffs' Lay Witness**

MR. FRANECKE Q.    Sir, how do you know John relayed it?

A.    How do I know?

Q.    Yeah.

A.    I think I downloaded the SEC report [SEC Complaint] that showed his

Ponzi scheme.  I think that's how I know to be true.

Q.    Sir, I move to strike the last answer as unresponsive.

THE COURT:  The jurors will disregard the last statement of his

testimony.[19]

*      *      *

Q.    Do you really think at the time anything was talked about while you did

your investment that John Ryan would intentionally misrepresent anything

---

[18]     Ryan Declaration ¶ 2, Ex. 1, 1226:14-1227:3.

[19]     Ryan Declaration ¶ 2, Ex. 1, 538:22-539:7.

16

Case: 09-03134   Doc# 33   Filed: 07/09/10   Entered: 07/09/10 16:44:57   Page 20 of
29

M B V   L A W   L L P
855  Front  STREET
SAN FRANCISCO  CA  94111

M B V   L A W   L L P

855 Front Street
SAN FRANCISCO CA 94111

1  to Nick or anybody else he talked to because he didn't talk to you, anybody

2  else he talked to about this investment?

3  A.   I wouldn't believe anything until I read a report of his Ponzi scheme.

4  Q.   Sir, I'm asking what you believe.

5  A.   This is what made my decision.

6  MR. FRANECKE:  Your Honor, I move to strike.

7  THE COURT:  Well, not responsive.  Your motion is denied.  Ask your

8  question.

9  MR. FRANECKE:  Q.  The question is, knowing him for 30 years, do you

10  think he had a character to misrepresent anything to anybody if he knew it

11  was wrong?

12  A.   I wouldn't have thought so, until I read the report.  Then people change.

13  Q.   People change?

14  A.   People change.

15  Q.   You read a report?

16  A.   Yes.

17  Q.   That you believe tells you something else?

18  A.   Yes, I do.[20]

19                              *          *          *

20  Q.   You read a report that said Von Cummings has defrauded hundreds of

21  people around the country and stolen millions of dollars; is that right?

22  Right?

23  A.   I read a report from the SEC is that stated Von Cummings had a Ponzi

24  scheme and John Ryan had his own Ponzi scheme.

25  Q.   John Ryan had his own Ponzi scheme?

26  A.   Yes, that's what it said.

27

28  _____
   [20]     Ryan Declaration ¶ 2, Ex. 1, 560:18-561:20.

17

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ADV. No. 09-03134

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

1    Q.   Okay.  That's what we're going to deal with here in this whole

2    litigation.  How -- let's talk about the Ponzi scheme.  Now, you know what a

3    Ponzi scheme is, right?

4    A.   Yes.

5    Q.   Okay.  Let's talk about that for a second.  Is there any indication in

6    anything you have seen with regard to what was told to you by your son,

7    Nick, that John Ryan knew at the time it was a Ponzi scheme?

8    A.   No.  No.  But he had his own Ponzi scheme which means that if this

9    deal would have come back to me like it was supposed to be insured.  Then

10   this would be fine, but not a penny came back to me.  So I am assuming I

11   should not -- same, I'm assuming I read this, and I believe that that's where

12   the money is. [21]

13                              *          *          *

14   Q.   Of course.  Would you -- actually, would you also believe that Von

15   Cummings stole money?

16   A.   I don't know Von Cummings.  I don't know what he did.

17   Q.   Right.  If you don't know Von Cummings, what is it that you now --

18   why do you believe then that John did something wrong, you don't believe

19   about Von Cummings, but you believe John did?

20   A.   Why would the SEC put a report out that's common knowledge that

21   you can load down from your computer stating that he had his own Ponzi

22   scheme, why would they say?

23   Q.   Why would they say that?

24   A.   Yes.

25   Q.   You want it to try the SEC case here?

26   A.   I'm not trying the SEC case.  I'm just saying this is what I read to get

27

---

28   [21]    Ryan Declaration ¶ 2, Ex. 1, 562:2-563:2.

18

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

1    my information, and you're saying it has no bearing on it.

2    THE COURT:  Ladies and gentlemen, we're not going to be paying

3    attention to these insinuations.  I'm going to at the time tell you.  Right now

4    don't get on your computer and look for the searching report. [22]

5    **Plaintiffs' Closing Argument**

6    [MR. LIBERTY:] Again, you are back to John has to know that this was an

7    Ponzi scheme.  It was a wrong act.  It was incorrect.  It was fraudulent.  It

8    was not a -- there was no Famco deal.  He's got to know all these things to

9    then get into conspiracy, but he didn't know that. It goes on.  You're

10   instructed that John Ryan was -- you have to prove that John Ryan was

11   aware that Von Cummings and others planned to defraud the plaintiffs.

12   Planned.  He has to be aware that there was actually a plan by Von

13   Cummings.[23]

14                    *        *        *

15   Mr. Franecke suggested you have a hard job to do.  It's not a hard job.  It's

16   easy.  It's easy to award my clients money because the facts are

17   overwhelming.  There was a Ponzi scheme.  There was an intent to defraud.

18   Mr. Ryan was a prime mover with Mr. Cummings.  Perhaps still liability

19   against Mr. Ryan without Mr. Cummings still liability against Mr. Ryan.

20   Malice, oppression and fraud are overwelming in this case.  The malice is a

21   bit more problematic, . . . .[24]

22                    *        *        *

23   This Ponzi scheme was developed by Mr. Ryan.  He took in my clients'

24   investments in the year 2001 to pay off other investors.  It's the classic

25

26   _____

27   [22]    Ryan Declaration ¶ 2, Ex. 1, 563:11-564:6.

         [23]    Ryan Declaration ¶ 2, Ex. 1, 2191:2-14.

28   [24]    Ryan Declaration ¶ 2, Ex. 1, 2222:9-20.

Case: 09-03134   Doc# 33   Filed: 07/09/10   Entered: 07/09/10 16:44:37   Page 23 of
29

scheme.[25]

&ast;    &ast;    &ast;

Send a message to the John Ryans of the world that in this community we

don't put up with fraudsters. In this community, we don't put with a

Ponzini scheme.[26]

## I. Mr. Ryan Brought This Action in a Reasonable Time After His Other Attempts to Correct the Record Had Failed, and This Court Found the Judgments to Be Non-Dischargeable

Most often these equitable actions to vacate or modify a judgment to a more favorable

result are not brought until after most or all other avenues of changing the result have failed, and

the failure of those avenues does not prevent this type of action from being brought and where

appropriate, won. Here the culmination of (1) the change of view of SEC from alleging that Mr.

Ryan was running a Ponzi scheme to a finding that Mr. Ryan did not know that Paramount was

not legitimate, (2) the indictment and convictions of Cummings and the Florida defrauders, and

the time all of that took, plus Mr. Ryan's pursuit of other approaches in this court regarding the

priority of liens, the dischargeability of his judgments obligations, and the running of his Chapter

11, did not fully mature until recently. Furthermore, no showing has been made by the

defendants that Mr. Ryan was tardy in asserting his equitable claims, or that they have been

prejudiced. Mr. Ryan's reasoning was: "I waited to bring this action until all the last of the

investigations had reached its near final culmination because it seemed logical and practical, if

not necessary to wait to attack the judgments until I could attack all aspects of all of them. The

last piece to fall into place was completion of the Florida investigation and near completion of its

prosecution of the perpetrators of the fraud that related to that judgment against me pertaining to

Defendant Daniele. To act before my clear absolution by the Florida prosecutors and the focus of

---

[25]     Ryan Declaration ¶ 2, Ex. 1, 2228:25-2229:2.

[26]     Ryan Declaration ¶ 2, Ex. 1, 2230:23-26.

Case 09-03134    Doc# 33    Filed 07/09/10    Entered 07/09/10 16:44:37    Page 24 of 29
PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Adv. No. 09-03134

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO, CA 94111

the case on each and all of the defendants in that prosecution would have left me with having to bring successive actions with respect to the judgments against me and the fact that there remained a judgment against me which said I had committed a fraud supportive of punitive damages. A piecemeal attack on the judgments would not have been appropriate or fair to me. No prejudice has occurred to the underlying plaintiffs that I can see." Ryan Declaration ¶ 11.

### J. The Jury Instructions Were A Mess – This Court Said It Was Glad It Was Not on The Jury with Those Instructions – The Jurors Agreed About the Instructions – So Did The Trial Court

As this court noted during the hearing before it on the Motion for Summary Judgment regarding the non-dischargeability of the judgments held by the defendants here, "THE COURT: Now I realize the judge was probably reading from his cue cards with all these instructions, but there's a lot of redundancy in these instructions. I'm glad I wasn't on that jury."[27]

You were not alone in that assessment about the instructions. At the trial:

THE FOREPERSON: Could I make a request? The instructions we got were terrible and they –

THE COURT: The only question is going to be what is the amount of punitive damages that you wish to award. You already heard the law.

THE FOREPERSON: Thank you.

THE COURT: And let me tell you that the lawyers in Court agree with you on the instructions.[28]

\*       \*       \*

[THE COURT]: You know, last time, Mr. Foreperson, you expressed a concern of the jurors which the Court agreed with you on that was you didn't like the instructions.[29]

---

[27]     Ryan Declaration ¶ 3, Ex. 2, Dischargeability Hearing (Summary Judgment Motion) Transcript, 21:17-20.

[28]     Ryan Declaration ¶ 2, Ex. 1, 2288:7-2288:17.

[29]     Ryan Declaration ¶ 2, Ex. 1, 2308:6-9.

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO   CA 94111

21

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

The problem with the instructions, particularly as they might bear on the non-dischargeability issue, provides another equity in favor of allowing Mr. Ryan a new and fair day in court.

**K.** **Extrinsic Fraud or Mistake Constitute Circumstances Which Deprive a Litigant of His Full Day in Court**

Although in the context of extrinsic fraud rather than extrinsic mistake, the discussion found in *City and County of San Francisco v. Cartagena*, 35 Cal.App.4th 1061 (1995) is helpful.

> **Notwithstanding the bar to a subsequent action that may result from application of the doctrine of res judicata, a party may still seek relief from a final judgment by appealing to the equitable power of the court.** Under certain limited circumstances a court, sitting in equity, can set aside or modify a valid final judgment obtained by fraud, mistake, or accident. (For a complete discussion of this topic, see our prior opinions in *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051 [ 202 Cal.Rptr. 116] (*Stevenot*), and *In re Marriage of Alexander* (1989) 212 Cal.App.3d 677 [ 261 Cal.Rptr. 9] (*Alexander*).) [footnote omitted][Emphasis added]
>
> *           *           *
>
> The type of fraud necessary to vacate a final judgment is extrinsic fraud, not fraud which is intrinsic to the trial of the case itself. ( *Stevenot*, *supra*, 154 Cal.App.3d at p. 1068.) Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. (*Ibid.*)
>
> *           *           *
>
> As illustrated . . ., in demonstrating extrinsic fraud, it is insufficient for a party to come into court and simply assert that the judgment was premised upon false facts. The party must show that such facts could not

reasonably have been discovered prior to the entry of judgment.

*Id.* at 1068-69.

Here because key facts that absolved Mr. Ryan of knowing, intentionally bad conduct, did not occur and were not developed until well after the trial was concluded, Mr. Ryan could not "reasonably have discovered them prior to the entry of judgment." Such facts included: The SEC exonerating Mr. Ryan from its earlier alleged but unproven claim that he had run a Ponzi scheme and knowingly was a part of Von Cummings Ponzi scheme, that after massive investigation both Ohio and Florida prosecutors had determined that he was not a perpetrator of criminal acts but a unknowing victim, and Cummings guilty plea and statements admitting his own wrong.

In this unusual situation, the major emphasis of the plaintiffs' case presentation was that Mr. Ryan had run Ponzi scheme and the Court permitted reference to the SEC Complaint without even giving meaningful direction to the jury to ignore what was being "testified" regarding it, particularly including the testimony of the underlying plaintiffs' expert witness. Additionally, with the backdrop that the court allowed reference to the notion that attachment liens had been permitted by the court against Mr. Ryan based on the claims being made by the plaintiffs, thus suggesting the court's agreement with the plaintiffs' view of the case, Mr. Ryan was not given his fair day in court.

### L. The Court Should Deny or Continue the Motion to Allow Plaintiff to Conduct Discovery Under Rule 56(f).

This Court can and should deny this Motion or continue the hearing and allow plaintiff to conduct discovery. Rule 56(f) states upon an opposing party's declaration showing that plaintiffs "cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may deny the motion or continue the hearing to allow additional discover "or make such other order as is just." FRCP Rule 56(f). As set forth the Declaration of Plaintiff's counsel David Brown, there are important witnesses who should be deposed and who are likely to have evidence on this key issues. Brown 56(f) Declaration ¶¶ 4-10.

Ryan's inability to present that evidence at this time was not due to any fault of his.

M B V   L A W   L L P
855 Front Street
SAN FRANCISCO CA 94111

23

Rather, this Court denied Ryan's motion to compel discovery without prejudice feeling at that time that discovery was not necessary. However, Mr. Karel's testimony may prove important to proving Mr. Ryan's case. Additionally, seeking discovery from the Ohio prosecutors with respect to the case against Von Cummings, in which Mr. Ryan's relationship with Cummings Ponzi scheme was looked at with a result of no prosecution of Ryan flowing from that look is important as well.

Mr. James Karel was defendants' (plaintiffs in the underlying action) expert who testified that Ryan was running a Ponzi scheme. In *Andersen v. Howland*, 3 Cal.App.3d 380 (1970) the Court held that where an expert at trial changes his mind, that may suffice as a basis to grant a new trial. *Id.* at 384-85. Plaintiff seeks to depose Mr. Karel armed with the facts that have surfaced over time since the underlying trial and appeal to determine if those facts cause Mr. Karel to rethink or adjust his opinion regarding Mr. Ryan.

Among other things, plaintiff seeks to learn if Mr. Karel's firm belief at trial that Mr. Ryan was operating a Ponzi scheme will change since his opinion was largely based on the SEC Complaint in which it was recited that Ryan had been running a Ponzi scheme. Now, as noted above, the SEC has concluded and found that Ryan was an unknowing participant in Von Cummings' Ponzi Scheme.

Also, will Mr. Karel's opinion change considering that (1) the Federal Prosecutors in Ohio indicted Cummings' who pleaded guilty, and received a 40 month sentence, without charging Mr. Ryan, and (2) the State of Florida prosecutors considered Ryan a victim rather than a perpetrator of the fraud on which one of the plaintiffs in the underlying action brought his case against Ryan.

These newly discovered facts will likely force Mr. Karel's opinion to change because the original hypothetical facts on which he relied to form his opinion can now be shown to be incorrect.

In writing this brief, we have concluded that discovery regarding the Ohio Federal prosecutors efforts and conclusions with respect to Ryan is appropriate. While it is unclear how much information such prosecutors will provide, the chance for discovery of facts ought to be afforded to Mr. Ryan. Hopefully, the discovery will confirm that the prosecutors spent

M B V  L A W  L L P
855 Front Street
SAN FRANCISCO  CA 94111

considerable time in their investigating including looking at Mr. Ryan's conduct with respect to Cummings and Paramount and concluded no behavior of Mr. Ryan warranted any prosecution. This fact is important to the timeline of why Mr. Ryan prior to his trial could not reasonably have developed the same information, particularly with Cummings taking the 5th amendment to prevent substantive discovery.

## III.    CONCLUSION

Mr. Ryan did not have fair trial and could not have developed a forceful presentation until recently, when the facts now being raised by him all coalesced and came together. He should be afforded a full opportunity to try this case to prove that he is entitled to a new and fair underlying trial.


Dated: July 9, 2010.

<div style="margin-left:40%;">

Respectfully submitted,

MBV LAW LLP


By:    /s/ *David J. Brown*_____
       David J. Brown
       Attorney for Plaintiff John A. Ryan

</div>

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
ADV. No. 09-03134