1   DAVID J. BROWN, ESQ. (SBN 56628)
    (davidb@mbvlaw.com)
2   MBV LAW LLP
    davidbrown@mbvlaw.com
3   855 Front Street
    San Francisco, California 94111
4   Telephone:    415-781-4400
    Facsimile:    415-989-5143
5
    Attorneys for Plaintiff John A. Ryan
6

7

8                 UNITED STATES BANKRUPTCY COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

M B V   L A W   L L P
855 Front STREET
SAN FRANCISCO CA 94111

| | |
|---|---|
| 12  In Re | CASE No. 05-32933 Chapter 7 |
| 13  JOHN A. RYAN and DANIELLE T. | |
| 14  RYAN, | |
| 15                    Debtors, | |
| 16  JOHN A. RYAN, an individual, | ADVERSARY No. 09-03134 |
| 17                    Plaintiff, | |
| 18      v. | **REQUEST FOR JUDICIAL NOTICE** |
| 19  NICKLOS CIOLINO; CHARLES CIO- | DATE:      AUGUST 6, 2010 |
|     LINO; ROBERT AGUILAR; STEPHEN | TIME:      11:00 AM |
| 20  DANIELE; DANIEL DELORENZI; ALMA | PLACE:     DEPARTMENT 22 |
|     CIOLINO; EVELYN CIOLINO; PRISCIL- | JUDGE:     MONTALI |
| 21  LA AGUILAR; THERESA DANIELE; and | |
|     DOES 1 to 25, inclusive, | |
| 22 | |
| 23                    Defendants. | |

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE

1.     The attached Indictment, Plea Agreement, and Criminal Judgment are subject to judicial notice as court files.  *See* Federal Civil Procedure Before Trial (Rutter 2009) ¶ 12:55.

2.     Attached as Exhibit 1 is a true and correct copy of the Indictment in *United States of America v. Von C. Cummings dba Paramount Financial Partners, L.P., Paramount Capital Management, LLC*, Case No. 2:06 CR 045 ("*US v. Cummings*"), which was filed in the United States District Court for the Southern District of Ohio on February 16, 2006.

3.     Attached as Exhibit 2 is a true and correct copy of the Plea Agreement in *US v. Cummings* which was filed in the *US v. Cummings* matter on September 14, 2006.

4.     Attached as Exhibit 3 is a true and correct copy of Defendant Von Cummings' Sentencing Memorandum which was filed in the *US v. Cummings* matter on May 9, 2008.

5.     Attached as Exhibit 4 is a true and correct copy of the Judgment in the *US v. Cummings* matter, which was file on July 28, 2008, sentencing Mr. Cummings to 40 months of imprisonment on two counts, which run concurrently.


DATED:  July 9, 2010                                 Respectfully submitted,

                                                     MBV LAW LLP


                                       By
                                                     s/ David J. Brown
                                                     David J. Brown
                                                     Attorneys For Plaintiff John A. Ryan

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 1

Case: 09-03134    Doc# 34    Filed: 07/09/10    Entered: 07/09/10 16:45:51    Page 3 of 80

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2006 FEB 16  P 12: 04

UNITED STATES OF AMERICA            :

v.                                  :     Case No: **2 : 0 6 cr 0 4 5 4**

                                          JUDGE      **JUDGE HOLSCHUH**

VON C. CUMMINGS,                    :
  dba PARAMOUNT FINANCIAL PARTNERS, L.P.,
      PARAMOUNT CAPITAL MANAGEMENT, LLC.

                              I N D I C T M E N T

                              18 U.S.C. §1341
                              18 U.S.C. §1343
                              18 U.S.C. §2

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS
### INTRODUCTION

1. During the time period of 1998 through and including 2002, the defendant, **VON CUMMINGS**, primarily using the corporate name of **PARAMOUNT FINANCIAL PARTNERS, L.P.**, did business in the Columbus, Ohio area, and elsewhere.

2. Defendant **VON CUMMINGS** was the owner and only general partner in **PARAMOUNT FINANCIAL PARTNERS, LLP.**

3. Defendant **VON CUMMINGS** used both 5940 Wilcox Place, Suite B, Dublin, Ohio 43016 and 8101 North High Street, Suite 160, Columbus, Ohio 43235 as the business addresses for **PARAMOUNT FINANCIAL PARTNERS, L.P.**.

4. Defendant **VON CUMMINGS** had numerous checking, savings and investment accounts both in his name and in the name of **PARAMOUNT FINANCIAL PARTNERS, L.P.**, as well as in other names, all of which were under the direct control or operated at the direction of the defendant **VON CUMMINGS**.

5. Defendant **VON CUMMINGS** did not hold a series 7 license and was not authorized to buy or sell individual stocks on behalf of others.

### THE SCHEME TO DEFRAUD

6. Beginning on or about February 1998 and continuing through on or about June 2002, in the Southern District of Ohio and elsewhere, the defendant **VON CUMMINGS**, did devise and execute a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, and in furtherance of the scheme, did use and cause the use of the United States mails and interstate telephone wires, to defraud at least 21 victim investors for a total amount of approximately $7,546,794.

7. It was a part of the scheme and artifice to defraud and for obtaining money that the defendant **VON CUMMINGS** received funds totaling approximately $10,240,777 from at least 21 known victim investors.

2

8.   It was further a part of the scheme and artifice to defraud and for obtaining money that **VON CUMMINGS** told these victim investors that **PARAMOUNT FINANCIAL PARTNERS, L.P.** was a hedge fund and that **VON CUMMINGS** was the manager of this fund.

9. It was further a part of the scheme and artifice to defraud and for obtaining money that the defendant **VON CUMMINGS** told these victim investors that their money would be used by **PARAMOUNT FINANCIAL PARTNERS, L.P.** and **VON CUMMINGS** to purchase stocks, mutual funds and/or discounted stocks termed "pre-IPOs" (Initial Public Offerings).

10. It was further a part of the scheme and artifice to defraud and for obtaining money that the defendant, **VON CUMMINGS** or others acting at his direction, deposited victim investor funds into accounts controlled by **VON CUMMINGS** and/or **PARAMOUNT FINANCIAL PARTNERS, L.P.**.

11. It was further a part of the scheme and artifice to defraud and for obtaining money that the defendant **VON CUMMINGS** and/or **PARAMOUNT FINANCIAL PARTNERS, L.P.** never purchased any stocks, mutual funds and/or discounted stocks termed "pre-IPOs" on behalf of the victim investors.

12. It was further a part of the scheme and artifice to defraud and for obtaining money that the defendant **VON CUMMINGS** instead diverted and spent victim investor funds for his own

3

personal and business expenses as well as to pay some of his earlier investors.

13. It was further a part of the scheme and artifice to defraud and for obtaining money that the defendant **VON CUMMINGS** either mailed or faxed fraudulent "Information Updates" and/or similar statements to the victim investors falsely representing that their money had been used to purchase specific stocks or mutual funds or had been invested in a hedge fund.

### COUNT 1

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about February 20, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to National Association of Christian Athletes, at their business address in Dayton, Tennessee, 37321 from Paramount Financial Partners, L.P., 5940 Wilcox Place, Suite B, Dublin, Ohio 43016.

In violation of 18 U.S.C. §1341 and §2

4

## COUNT 2

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about March 1, 2001, in the Southern District of Ohio and elsewhere, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly did transmit and caused to be transmitted, in interstate commerce, by means of a telephone, or a wire communication, certain writings, sounds and signals, that is; a purported Bear Stearns account statement for a Paramount Financial Partners, L.P. account, to John Ryan in San Mateo, California at (650)364-6431 (for victim Russell Klein), from **VON CUMMINGS** (954)978-8293 in Pompano Beach, Florida.

In violation of 18 U.S.C. §1343 and §2

## COUNT 3

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about March 1, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and

5

attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery a check drawn on the account of Paramount Financial Partners, L.P., to Jeffrey Cobb, at his home address in Memphis, Tennessee, 38125 from Paramount Financial Partners, L.P., 5940 Wilcox Place, Suite B, Dublin, Ohio 43016.

In violation of 18 U.S.C. §1341 and §2

## COUNT 4

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about March 6, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly did cause to be transmitted, in interstate commerce, by means of a telephone, or a wire communication, certain writings, sounds and signals, that is; an interstate wire communication by Frank Valinho, Jacksonville, Florida, directing First Union Bank, to

6

wire transfer funds from account #9984301732 in the amount of $225,000 to the Bank One, Columbus, Ohio account #1590087902 of Paramount Financial Partners L.P..

In violation of 18 U.S.C. §1343 and §2

## COUNT 5

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about March 6, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly did cause to be transmitted, in interstate commerce, by means of a telephone, or a wire communication, certain writings, sounds and signals, that is; an interstate wire communication by Joseph Valinho, Jacksonville, Florida, directing First Union Bank, to wire transfer funds from account #9984301745 in the amount of $225,000 to the Bank One, Columbus, Ohio account #1590087902 of Paramount Financial Partners L.P..

In violation of 18 U.S.C. §1343 and §2

## COUNT 6

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about April 24, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Account Holdings Summary" addressed to C. Patrick McAllister, to his home address, in Chillicothe, Ohio 45601 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 7

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about May 7, 2001, in the Southern District of Ohio, **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by

8

means of false and fraudulent pretenses, representations and promises, willfully and knowingly did transmit and caused to be transmitted, in interstate commerce, by means of a telephone, or a wire communication, certain writings, sounds and signals, that is; an "Information Update" to John Ryan in San Mateo, California at (650)364-6431 (for victim John Geniali), from **VON CUMMINGS** (614)848-3157 in Columbus, Ohio.

In violation of 18 U.S.C. §1343 and §2

## COUNT 8

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about June 30, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be sent by Federal Express, a private interstate carrier, for delivery an "Information Update" addressed to Ronald H. Fewster, to his home address, in Bainbridge, Ohio 45612 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

9

## COUNT 9

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about June 30, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS,** for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Bonnie Raineri, to her home address, in West Palm, Florida 33415 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 10

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about June 30, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS,** for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to

10

be placed in the United States Mail for delivery an "Information Update" addressed to Ralph Tamm, to his home address, in Bensalem, Pennsylvania 19020 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 11

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about July 9, 2001, in the Southern District of Ohio, **VON CUMMINGS,** for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Donald and Jean Billy, to their home address, in Youngstown, Ohio 44509 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 12

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this

11

Indictment are incorporated herein as if fully rewritten.

On or about July 9, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Dr. Mark Billy, to his home address, in Canfield, Ohio 44406, from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

### COUNT 13

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about July 9, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Christine Bustamante, to her home address,

12

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 15 of 80

in Dublin, Ohio 43017 from Paramount Financial Partners, L.P.,

8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 14

The allegations of paragraphs 1 through 13 of the General

Allegations, Introduction and Scheme to Defraud sections of this

Indictment are incorporated herein as if fully rewritten.

On or about ~~May 7, 2001~~ July 10, 2001 in the Southern District of Ohio,

defendant **VON CUMMINGS**, for the purpose of executing and

attempting to execute a scheme to defraud and to obtain money and

property by means of false and fraudulent pretenses,

representations and promises, willfully and knowingly did

transmit and caused to be transmitted, in interstate commerce, by

means of a telephone, or a wire communication, certain writings,

sounds and signals, that is; an "Information Update" to Steven

Baldwin in Hillsboro, California at (650)348-2825, from **VON**

**CUMMINGS** (614)848-3157 in Columbus, Ohio.

In violation of 18 U.S.C. §1343 and §2

## COUNT 15

The allegations of paragraphs 1 through 13 of the General

Allegations, Introduction and Scheme to Defraud sections of this

Indictment are incorporated herein as if fully rewritten.

13

On or about August 14, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly did transmit and caused to be transmitted, in interstate commerce, by means of a telephone, or a wire communication, certain writings, sounds and signals, that is; an "Information Update" to John Ryan in San Mateo, California at (650)364-6431 (for victim Daniel Delorenzi), from **VON CUMMINGS** (614)848-3157 in Columbus, Ohio.

In violation of 18 U.S.C. §1343 and §2

## COUNT 16

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about October 15, 2001, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Michael Naples, to his home address, in

14

Worthington, Ohio 43085 from Paramount Financial Partners, L.P.,

8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

### COUNT 17

The allegations of paragraphs 1 through 13 of the General

Allegations, Introduction and Scheme to Defraud sections of this

Indictment are incorporated herein as if fully rewritten.

On or about October 30, 2001, in the Southern District of

Ohio, defendant **VON CUMMINGS**, for the purpose of executing and

attempting to execute a scheme to defraud and to obtain money and

property by means of false and fraudulent pretenses,

representations and promises, willfully and knowingly caused to

be placed in the United States Mail for delivery an "Information

Update" addressed to Adi Naples, to her home address, in

Youngstown, Ohio 44406 from Paramount Financial Partners, L.P.,

8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

### COUNT 18

The allegations of paragraphs 1 through 13 of the General

Allegations, Introduction and Scheme to Defraud sections of this

Indictment are incorporated herein as if fully rewritten.

On or about November 6, 2001, in the Southern District of

Ohio, defendant **VON CUMMINGS,** for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Michael Naples, Senior, to his home address, in Youngstown, Ohio 44509 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 19

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about December 30, 2001, in the Southern District of Ohio, defendant·**VON CUMMINGS,** for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery an "Information Update" addressed to Steven B. Houseman, to his home address, in Bainbridge, Ohio 45612 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

16

## COUNT 20

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about February 22, 2002, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery a "Paramount Captial Management Bank Voucher" addressed to Madelyn Good, to her home address, in Chillicothe, Ohio 45601 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

## COUNT 21

The allegations of paragraphs 1 through 13 of the General Allegations, Introduction and Scheme to Defraud sections of this Indictment are incorporated herein as if fully rewritten.

On or about April 2, 2002, in the Southern District of Ohio, defendant **VON CUMMINGS**, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses,

17

representations and promises, willfully and knowingly caused to be placed in the United States Mail for delivery a Paramount Financial Partners L.P. "K-1 statement" addressed to Wenfu Chen, to his home address, in Chillicothe, Ohio 45601 from Paramount Financial Partners, L.P., 8101 North High Street, Suite 160, Columbus, Ohio 43235.

In violation of 18 U.S.C. §1341 and §2

A true bill.

S/
FOREPERSON

GARY L. SPARTIS
Deputy Criminal Chief
Assistant United States Attorney

18

# EXHIBIT 2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

UNITED STATES OF AMERICA            :

      v.                              :     Case No: CR-2-06-045

VON C. CUMMINGS                     :     Judge HOLSCHUH

### PLEA AGREEMENT

    Plaintiff United States of America and Defendant VON
CUMMINGS hereby enter into the following Plea Agreement pursuant
to Rule 11(c) of the Federal Rules of Criminal Procedure:

    1.  Defendant VON CUMMINGS will enter a plea of guilty to
Counts 1 and 21 of the Indictment which charge him with mail
fraud in violation of 18 U.S.C. §1341.

    2.  Defendant VON CUMMINGS understands the penalty that may
be imposed pursuant to his pleas of guilty on Counts 1 and 21 is
a maximum term of imprisonment of 20 years, a fine up to $250,000
and a term of supervised release of at least 3 years.

    3.  Prior to or at the time the Defendant is sentenced, the
Defendant will pay a special assessment of $200.00 as required in
18 U.S.C. §3013.  This assessment shall be paid by the Defendant
before sentence is imposed and Defendant will furnish a receipt
at the time of sentencing.  The payment shall be made to the
United States District Court, at the Clerk's Office, Room 260, 85
Marconi Boulevard, Columbus, Ohio 43215.

4. If such a plea of guilty is entered, and not withdrawn, and VON CUMMINGS acts in accordance with all other terms of this agreement, the U.S. Attorney for the Southern District of Ohio agrees to dismiss Counts 2 through 20 and to not file additional criminal charges against Defendant based on his activities charged in the Indictment, or based on other unlawful activities related to mail fraud in the Southern District of Ohio occurring prior to the date of the Indictment and as to which the he gives testimony or makes statements pursuant to this agreement.

5. Defendant VON CUMMINGS agrees to testify truthfully and completely concerning all matters pertaining to the Indictment filed herein and to any and all other mail fraud and/or wire fraud activity in which he may have been involved or as to which he may have knowledge. Defendant further agrees to provide a complete statement to authorities of the United States concerning such matters prior to the entry of his guilty plea pursuant to this agreement. Defendant agrees to submit to supplemental debriefings on such matters whenever requested by authorities of the United States, whether before or after her plea is entered.

Pursuant to §1B1.8 of the Federal Sentencing Guidelines, the government agrees that any self-incriminating information so provided will not be used against the defendant in determining the applicable guideline range for sentencing, or as a basis for upward departure from the guideline range.

2

Case: 09-03134    Doc# 34    Filed: 07/09/10    Entered: 07/09/10 16:45:51    Page 24 of 80

6. By virtue of pleading guilty to Counts 1 and 21 of the Indictment in exchange for the dismissal of Counts 2 through 20, the defendant understands that he is not a prevailing party as defined by 18 U.S.C. §3006A (statutory note captioned "Attorney Fees and Litigation Expenses to Defense") and hereby expressly waives his right to sue the United States.

7. The parties agree that the pursuant to U.S.S.G. 2F1.1(a) (year 2000 Sentencing Guidelines) the base offense level attributable to defendant VON CUMMINGS for the offenses to which he is pleading guilty is an offense level of 6 (six). The parties agree that pursuant to §2F1.1(b)(1) that the amount of loss is more than $5,000,000 but less than $10,000,000, (specifically $7,546,794.00) which results in an increase of 14 (fourteen) levels. The parties further agree that pursuant to §2F1.1(b)(2) that the offense involved more than one victim which results in an increase of 2 (two) levels. The parties further agree that pursuant to §2F1.1(b)(4), that the defendant did not misrepresent that he was acting on behalf of a charitable, educational, religious or political organization, or a government agency, and therefore there would be no enhancement for this provision. The parties understand that all of these agreements are not binding on the Court and the final determination concerning relevant conduct and offense level rests solely with the Court.

3

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 25 of 80

8. The United States Attorney for the Southern District of Ohio recommends that as of the time of the execution of this Plea Agreement the defendant has accepted responsibility for the offense(s) to which he has agreed to plead guilty. If the defendant continues to accept responsibility through the time of sentencing, the United States will notify the Court pursuant to U.S.S.G. § 3E1.1(b) that the defendant has timely notified authorities of his intention to plead guilty.

9. The parties have further agreed pursuant to U.S.S.G. §5E1.1 and 18 U.S.C. §3663, that Defendant shall pay restitution to the following victims as specified in the Indictment: $870,000.00 to the National Association of Christian Athletes; $342,250.00 to Russell Klein; $100,000.00 to Jeff Cobb; $800,000.00 to Frank and Joe Valinho; $81,500.00 to C. Patrick McAllister; $359,950.00 to John Geniali; $349,608.94 to Ronald Fewster; $2,255,383.93 to Bonnie Raineri; $240,000.00 to Ralph Tamm; $60,000.00 to Donald and Jean Billy; $156,632.66 to Mark and Michelle Billy; $19,120.00 to Christine Bustamante; $72,000.00 to Steven Baldwin; $100,000.00 to Daniel Deloranzi; $57,239.56 to Michael Naples; $77,625.00 to Adi Naples; $31,750.00 to Michael Naples, Senior; $450,000.00 to Steven Houseman; $358,734.84 to Madelyn Good; and $765,000.00 to Wenfu Chen.

4

10.  Defendant understands that this agreement does not protect him from prosecution for perjury, should he testify untruthfully, or for making false statements, nor does it protect him from prosecution for other crimes or offenses which the United States discovers by independent investigation. Further, should Defendant VON CUMMINGS fail to comply fully with the terms and conditions set forth herein or should he fail to appear as required for sentencing, this agreement is void and of no effect, and Defendant shall be subject to prosecution as if the agreement had never been made.

11.  The Defendant is aware that the United States Sentencing Guidelines and Policy Statements are no longer mandatory in determining his sentence. However, the defendant also understands that said guidelines and policy statements will be given consideration by the District Court, in conjunction with all other sentencing factors set forth in 18 U.S.C. §3553(a), to determine the appropriate sentence, pursuant to U.S. v. Booker, 543 U.S. ___, 2005 WL 50108 (January 12, 2005). The Defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set forth for the offense to which the Defendant pleads guilty. The Defendant is aware that the Court has not yet determined a sentence. The Defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the Defendant may have

5

received from the Defendant's counsel, the United States, or the probation office, is a prediction, not a promise, and is not binding on the United States, the probation office, or the Court. The United States makes no promise or representation concerning what sentence the Defendant will receive and the Defendant cannot withdraw a guilty plea based upon the actual sentence.

12. It is agreed that if the Court refuses to accept any provision of this Plea Agreement, with the exception of paragraphs 7, 8 and/or 9, neither party is bound by any of its provisions; Defendant may withdraw his guilty plea, and the United States Attorney for the Southern District of Ohio may pursue prosecution of the same or additional charges without prejudice.

13. Finally, the United States Attorney for the Southern District of Ohio agrees that if Defendant VON CUMMINGS provides substantial assistance in the investigation or prosecution of others who have committed criminal offenses, the United States Attorney may move the Court pursuant to 18 U.S.C. §3553(e) and\or §5K1.1 of the Federal Sentencing Guidelines for an appropriate departure from the otherwise applicable guideline range for defendant's sentence and will in connection therewith make known to the Court the nature and extent of defendant's assistance. Defendant understands that whether such motion should be made lies within the discretion of the United States Attorney and that

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 28 of 80

whether and to what extent such motion should be granted are solely matters for determination by the Court.

14. No additional promises, agreements, or conditions have been made relative to this matter other than those expressly set forth herein, and none will be made unless in writing and signed by all parties.

9/13/06
DATE

VON CUMMINGS
Defendant

JOSEPH E. SCOTT (0061640)
Attorney for Defendant

GREGORY G. LOCKHART
United States Attorney

KEVIN W. KELLEY (0042406)
Assistant U.S. Attorney

7

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 29 of 80

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA,       :

               **Plaintiff,**       :       **Case No. 2:06 CR 045**

        **vs.**       :       **Judge John D. Holschuh**

**VON CUMMINGS**       :

          **Defendant**       :

## DEFENDANT VON CUMMINGS' SENTENCING MEMORANDUM

    Now comes Defendant, Von Cummings, by and through undersigned counsel, and hereby submits this Sentencing Memorandum for the Court's review and consideration. Defendant respectfully requests this Court begin its analysis of the proper sentence from the 2000 Sentencing Guidelines, as agreed to in the Plea Agreement. Defendant respectfully submits that a non-incarcerative sentence or a sentence greatly reduced from that recommended even by the 2000 Guidelines is warranted because the recommended sentence is greater than necessary to achieve the purposes of sentencing under 18 U.S.C.§ 3553(a)(2). Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of section 3553(a).

<div align="right">

Respectfully Submitted,

/s/Joseph E. Scott
Joseph E. Scott (0061640)
Joseph E. Scott, Co. LPA
35 East Livingston Avenue
Columbus, Ohio 43215
Phone:    (614) 221-9790
**Facsimile:  (614) 228-6680**
E-mail:jscott@ohiocrimelaw.com
Attorney for Defendant Von C. Cummings

</div>

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

1

## MEMORANDUM IN SUPPORT

### I.      BACKGROUND.

Von Christopher Cummings was born on November 2, 1969, in Dayton, Ohio, to Jon Cummings III and Barbara Terrell. Von has one (1) sibling, a brother, Jon S. Cummings IV, now thirty-nine (39) years of age.

Von was raised in a middle class household with his brother. His father was a business owner, and his mother worked for General Motors. Von played football in high school, where he was the Junior Class President and Captain of the football team his senior year.

He left his family home at eighteen (18) years of age to attend Defiance College on a full athletic scholarship. Von played the position of running back for the football team. He became an "All-American" running back in Division III football. He was a three (3) time league leader in rushing, holds the single season team record in rushing yardage, was voted team captain his senior year, holds the carrier rushing yardage records at Defiance College, was the USA TODAY Div. III National Player of the week for rushing with 290 yards and seven (7) touchdowns as a sophomore in a single game, and was also voted the co-athlete of the year by the faculty of Defiance College. He graduated in 1993 with a Bachelor's of Arts in Marketing & a Bachelor's of Arts in Management. Upon graduation he was invited to a regional professional football combine in Chicago, where he achieved "scores" that qualified him to be invited for tryouts with NFL teams.

Von's father, Jon III, was an entrepreneur and owned his own business consulting firm, construction management firm, and an international commodities import and export business. Von always wanted to follow in his father's footsteps and become a successful business man. He held a number of lower level jobs, which took him progressively closer to his goal.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

2

Von expressed his industrious nature from a very young age. At ten (10) years old he bought one of his friends out of his paper route. Before attending Defiance College, he worked in a Sub House restaurant in a local mall, where he was responsible for the daily bank deposits. In 1994, Von held the position of "sales agent" for Bally's in Dayton, Ohio. In 1995, he began working as a stock broker training assistant, making cold calls for a producing stock broker at PaineWebber. He then was recruited by Jim Maker to become an insurance and mutual fund agent for Northwestern Mutual Life/Baird Securities, also in Dayton. Von was one of the top five "rookie" producing agents for Northwestern Mutual Life/Baird Securities in the Midwestern region in 1996, with only 8 months of production. Von was asked to speak as one of the Key Note speakers on a panel at the annual regional convention, and was given by his peers the responsibility to speak about the "Art of Closing". Von accomplished this all within four years of graduating from college. Hence in 1996, at the age of 26 years old, Von became CEO of Paramount Investment Corporation/Paramount Financial Partners in Columbus, Ohio. This was Von's first attempt at running a company of his own. Unfortunately, his ambition and inexperience became a disastrous combination, and the instant offense resulted.

Since 2004, Von has worked with his brother in building Omega Capital Funding, a commercial real estate loan consulting firm that they started together in Miami, Florida. He is currently the Senior Underwriter and the Marketing and Business Development Manager for Omega Capital Funding. His brother is the company President/CEO, and his father is now the Chairman. The family just recently took the company public on the NASDAQ OTCBB. Von even attended a seminar on commercial real estate and business lines of credit in 2004, so that he could be more helpful to the family business.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

3

Von is very closely connected to his family. He now works in a stable and legitimate family business with his father and brother. His mother continues to support him and his family in their venture as well, and has even made trips to Von's home in Miami, Florida to lend her moral support. Her trust, love, and support for him are clearly indicated in the attached letter of support. (*See Appendix II*).

Von recently married a Bulgarian immigrant, Teodora Georgieva, with whom he has had a six (6) year relationship. Teodora graduated from the Miami International Art and Design School on a student visa. She received a B. A. in Advertising in March of 2008. Von works hard to support them both. She, like the rest of his family, has stood by him throughout this ordeal, and has great faith that he is a good, decent, and changed man. This is further evidenced by the wonderful relationship that he maintains with his six (6) year old nephew.

Von had every intention of running a successful, legitimate business. It had been his lifelong dream, one which his father and older brother had already accomplished. **Von has never had an adult nor juvenile criminal conviction.** However, the overly confident approach that he took and his impatience for becoming successful coupled into irresponsible, and eventually illegal, business practices. Von takes full responsibility for his actions, and is completely remorseful for the impact his behavior has had on the lives of others.

Von did not reap great benefits from his criminal actions; the money invested in Paramount was lost and/or used to pay back to original investors. Von misrepresented himself, and was overly confident in his skills as an investor. When he was faced with the consequences of his terrible decisions, he was too proud to fully admit it. However, Von maintains that many of his clients knew that the investing was not going well; he told them that much.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

4

In no way is Von shying away from his responsibility for the great losses suffered by many of his clients. He is, though, asking the Court to see that he is not an ill-intentioned criminal, but merely a man who made some terrible choices in order to attain his dream. He will pay for these mistakes not only through the imposed sentence, but through a lifetime of personal, social, and professional embarrassment. Von is now 38 years old, which is almost 12 years from his first start in business. Based on the old adage of "if I only new what I know now," Von states, "those mistakes would have never occurred and those investors' lives could have been perhaps for the better." Von also states that, "the past 12 years have given me a true and better understanding of the business world and life", and "it takes time and hard work to build something that is long lasting and beneficial to all not just myself, and more importantly my family". Von, "truly believes he can make things right", and he also states, "he is not an overly emotional man, but his heart aches everyday for those friends, family, investors and close business associates that were a part of his past business dealings"

Von, along with his entire family, feels remorse and guilt for the loss of his investors. In an effort to address this and hopefully make the investors whole and compensate them for their losses, Omega Commercial Finance Corporation (OCFN) has been working with defense counsel for the last several months to set up a special "Von C. Cummings Victims Trust," and the beneficiaries will be the designated victims listed in the indictment. This Trust would be funded by newly authorized restricted stocks of Omega, restricted by the 144 rule for a term of six (6) months from issuance. It is intended that at least one million (1,000,000) shares of Omega will be deposited in the Trust within the next few weeks. OCFN began trading on the NASDAQ OTC Bulletin Board on January 18, 2008. (*See* Press Releases of: April 9, 2008, and April 14, 2008). (Appendix I)

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

5

## II.   PROCEDURAL HISTORY.

The Grand Jury for the Southern District of Ohio returned a twenty-one (21) count indictment against Von Cummings on February 16, 2006. Of the counts charged, fifteen (15) were for Mail Fraud in violation of 18 U.S.C. § 1341, and six (6) for Wire Fraud in violation of 18 U.S.C. §1343.

**On September 13, 2006, Von Cummings entered into a Plea Agreement with the United States Attorney's office.** Von agreed to plead guilty to Counts one (1) and twenty-one (21) for Mail Fraud, and Counts two (2) through twenty (20) were dismissed. **The parties further agreed to observe the year <u>2000 Sentencing Guidelines</u>, which provide a Base Offense Level of six (6) and an increase of fourteen (14) levels for economic loss.** The Level is increased by two (2) for multiple victims, but there is no increase for misrepresentation. The written Plea Agreement also included a clause referring to Mr. Cummings's acceptance of responsibility, indicating that if Mr. Cummings continued to cooperate, the AUSA would notify the court of his timely notification of intent to plead guilty. On October 31, 2006, Mr. Cummings appeared before this Honorable Court and entered his plea of guilty to Counts one (1) and twenty-one (21).

## III.   SENTENCING AFTER BOOKER.

In 2005, the Supreme Court held that its Sixth Amendment holdings in *Blakely v. Washington* and *Apprendi v. New Jersey* applied to the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220 (2005). Given the mandatory nature of the Guidelines at that time, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines." *Id.* at 235. The Court reaffirmed its holding in *Apprendi*, holding that:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

6

a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Id.* at 244.

Based on this conclusion, the Court ultimately held that the provisions of the Sentencing Reform Act of 1984 making the Guidelines mandatory were incompatible with its previous Sixth Amendment holdings. *Id.* Thus, the Guidelines are now merely advisory. *Id.* The Guideline recommendation is now just one of many factors to consider when sentencing a defendant. *Id.; see also United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). The sentence must be "tailor[ed] . . . in light of other statutory concerns as well," including those factors outlined in 18 U.S.C. § 3553. *Booker*, 543 U.S. at 245-46.

Under *Booker*, then, a sentencing court must consider the factors delineated in 18 U.S.C.§ 3553(a) to formulate an appropriate sentence for each defendant. *Booker*, 543 U.S. at 259; *see also Jackson*, 408 F.3d at 304. A sentencing court's task is not to impose a "reasonable" sentence, but rather to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). "Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task." *Id.* The goal of § 3553 is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [that section]." 18 U.S.C. § 3553(a); *United States v. Johnson*, 467 F.3d 559, 563 (6th Cir. 2006) (citing *Foreman*, 436 F.3d at 643) (emphasis added).

Under § 3553(a)(2), the purposes of a sentence include:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillips

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

7

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.*

In determining such a sufficient sentence, the sentencing court must also consider the other factors delineated in § 3553(a). These factors include:

> the nature and circumstances of the offense and the history and characteristics of the defendant; ....the kinds of sentences available; the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

*Id.* Any sentence imposed must be based on these factors and must be the minimum necessary to ensure accomplishment of the purposes of sentencing under §3553(a)(2). A sentencing judge may not simply presume that a sentence within the Guidelines range is reasonable. *Gall v. United States,* 128 S. Ct. 586, 596-97 (2007); *Johnson,* 467 F.3d at 563. Rather, the sentencing court "must make an individualized assessment based on the facts presented," considering "'every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate ... the punishment to ensue.'" *Gall,* 128 S.Ct. at 597 (quoting *Koon v. United States,* 518 U.S. 81 98 (1996)). A court must fully consider the factors delineated in 18 U.S.C. § 3553 and articulate the reasons for the sentence imposed before a sentence may be considered appropriate. *See id.*; *Johnson,* 467 F.3d at 563.

Other statutory provisions also give the sentencing court guidance in determining a criminal sentence. For example, section 3582(a) instructs sentencing courts that "imprisonment is **not** an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a)(emphasis added). Courts must recognize this limitation along with the factors delineated in §3553(a) in imposing any type of sentence of imprisonment. *Id.* Courts must also recognize that non-incarcerative sentences are not without their restrictions on liberty. The Supreme Court recently recognized this in *Gall,* noting that while custodial

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

8

sentences are more severe, probation sentences still "substantially restrict ... liberty." *Gall*, 128 S. Ct. at 595.

In developing an appropriate sentence for a defendant, courts may now consider mitigating factors such as background, character of the defendant, employment record, family ties and responsibilities, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth, despite the original prohibition against considering these factors in the Guidelines. 18 U.S.C. § 3661; *Booker*, 543 U.S. at 250. Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This language clearly overrides the policy statements in the advisory Guidelines. *See Booker*, 543 U.S. at 250.

There is essentially no limit on the number of potential factors that may warrant departure from the sentence recommended by the sentencing guidelines. *Koon*, 518 U.S. at 106. For example, a court in Indiana noted that the age of the defendant impacts any proposed sentence, because recidivism reduces dramatically with age. *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 30073 (N.D. Ind. February 3, 2005), *cited with approval by United States v. Coleman*, 370 F. Supp. 2d 661 (S.D. Ohio 2005). Thus, the court sentenced a 57-year-old defendant to a term of imprisonment five years shorter than the minimum recommended by the Guidelines. *Id.* at *1–3. In another instance, a court in Virginia noted that a criminal history of offenses committed as a youth posed less risk of recidivism than offenses committed closer to the time of the current offense. *United States v. Naylor*, 359 F. Supp. 2d 521 (W.D. Va. 2005). Thus, the court imposed a much lesser sentence than recommended by the Guidelines based on his criminal history level, noting that the Supreme

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

9

Court has found significant differences in moral responsibility for crime between adults and juveniles. *Id.* at 524 (citing *Roper v. Simmons*, 543 U.S. 551 (2005)).

In sum, *Booker* requires a sentencing court to carefully evaluate all of the factors outlined in 18 U.S.C. § 3553(a) rather than merely focusing on the Guidelines. The Guidelines have now become only one of *many* factors for a sentencing court to consider. A sentence based on the Guideline range is no longer per se "reasonable" at the appellate level and will be overturned if there is not an indication in the record that a court has considered and applied the other factors delineated in § 3553(a). A sentencing court must, based on these factors, impose only the minimum sentence necessary to achieve the goals of sentencing.

## IV.   THE VERSION OF THE SENTENCING GUIDELINES TO CONSIDER AND ROLE ENHANCEMENT.

### A.   THE 2000 FEDERAL SENTENCING GUIDELINES IS THE VERSION THAT SHOULD BE CONSIDERED.

In preparing the Presentence Investigation Report (PSIR), the United States Probation Office relied on the 2006 Sentencing Guidelines rather than the 2000 Federal Sentencing Guidelines that the Government and Defendant both agreed in the Plea Agreement should be applied in this case. The PSIR in ¶ 29, Page 6 states that the 2006 United States Sentencing Commission Guidelines Manual "has been used in this case as this is the edition in effect at the time the instant offense concluded." However, in ¶ 14, Page 2, the PSIR states that "beginning on or about February 1998 and continuing through on or about June 2002" this illegal behavior occurred. Moreover, the PSIR in ¶¶ 20 and 21, Page 4, acknowledges that the two (2) Counts Mr. Cummings pled guilty to, occurred on February 20, 2001 and April 2, 2002.

It is proper and acceptable to consider the 2000 Federal Sentencing Guidelines inasmuch as they were the Guidelines in effect at the time the overwhelming majority of the

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

10

alleged illegal behavior occurred in this case. Moreover, the version of the Guidelines to be considered was an integral part of the negotiations and Plea Agreement reached in this case between the United States Attorney's Office and the Defendant's legal counsel as reflected in the September 13, 2006 Plea Agreement and the subsequent plea in this Court on October 31, 2006. Despite the United States Attorney's Office and the Defense expressly agreeing to the application of the 2000 Sentencing Guidelines in the September 13th Plea Agreement and at the Plea on October 31, 2006, the PSIR relies on the 2006 Guidelines.

**The 2000 Federal Sentencing Guidelines is the appropriate version to be considered based on the agreement between the parties.** The Plea Agreement clearly indicates that the parties have agreed that the 2000 Sentencing Guidelines is the correct version to be considered in the instant case. The PSIR, in Part A, ¶ six (6), also clearly acknowledges the parties' agreement to use the 2000 Guidelines. However, the Final PSIR instead uses the 2006 Sentencing Guidelines in its recommendation. The PSIR states that: "the District Court judges for the Southern District of Ohio directed the probation office to apply the guidelines in effect at the time of sentencing in all cases." However, now, at the time of sentencing, the 2006 Guidelines are not in effect.

The Plea Agreement states:

> The parties agree that the (sic) pursuant to U.S.S.G. § 2F1.1(a) (year 2000 Sentencing Guidelines) the base offense level attributable to VON CUMMINGS for the offenses to which he is pleading guilty is an offense level of 6 (six). The parties agree that pursuant to § 2F1.1(b)(1) that the amount of loss is more than $5,000,000 but less than $10,000,000...which results in an increase of 14 (fourteen) levels.

(Plea Agreement, ¶ seven (7)). In *United States v. Patino*, the District Court for the Northern District of Ohio noted that **even though the defendant was not entitled to the application of the 2000 Sentencing Guidelines, the Court considered the application of the 2000**

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

11

Guidelines appropriate because the parties' plea agreement contemplated the use of the **2000 Guidelines and because the vast majority of the relevant criminal conduct occurred prior to the revision.** *United States v. Patino*, 2006 U.S. Dist. LEXIS 16408, *7-8 (N.D. Ohio April 5, 2006). This is the exact situation in which the parties find themselves now. **Mr. Cummings signed a Plea Agreement based on the 2000 Guidelines, based on § 2F1.1, which was thereafter deleted from the Manual.** It is clear that the parties intended their agreement to employ the 2000 Guidelines. Therefore, the appropriate version of the guidelines to consider is the 2000 Sentencing Guidelines for this case.

> **1. The Sentencing Range Would Be Either 30 to 37 Months or 37 to 46 Months Under the 2000 Sentencing Guidelines.**

**If the 2000 Sentencing Guidelines were employed, by the Probation Department's calculations, the Total Offense Level in this case would be nineteen (19).** The Base Offense Level would be six (6), and fourteen (14) points would be added initially for economic loss of more than five (5) million, but less than ten (10) million dollars. A two (2) level enhancement would be added for multiple victims, but a three (3) level reduction is attributable to Mr. Cummings for acceptance of responsibility and timely notification, equaling a Total Offense Level of nineteen (19). **His Criminal History Category is a Category I, which would make his sentencing range thirty (30) to thirty-seven (37) months under the 2000 Guidelines.**

Additionally, even if the disputed two (2) level increase for abuse of position of trust were added under the 2000 Sentencing Guidelines, the range would only rise to thirty-seven (37) to forty-six (46) months.

> **B.   ENHANCEMENT FOR ROLE IN OFFENSE SHOULD NOT BE APPLIED.**

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

12

The PSIR applies a two (2) level enhancement for Mr. Cummings as an enhancement for "abuse of position of trust ... when the defendant's position significantly facilitated the commission or concealment of the offense." The PSIR purports that the "defendant was subject to almost no supervision given the fact that he was owner and the only general partner...." Defendant objects to this bold conclusion in the PSIR because there is not sufficient evidence to support these alleged facts. These facts are not charged in the indictment, nor pled in the Plea Agreement, nor found by a Judge or Jury beyond a "reasonable doubt". In fact, in *Booker*, the United States Supreme Court held that: "any fact (other than a conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738,756 (2005).

This same approach was followed by the Sixth Circuit in a case involving a defendant who had been given a four (4) level enhancement for engaging in an offense involving fifty (50) or more victims when the determination was not based on "judge-found" facts, nor charged in the indictment, nor found specifically by the jury. *United States v. Lacefield*, 146 Fed. Appx. 15, 2005 U.S. App. LEXIS 16098 (6th Cir. 2005) (unpublished). Therefore, an adjustment and increase in sentence based on facts not found by a jury or admitted to by a defendant is invalid. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 200 (2005).

## V.    SENTENCING FACTORS UNDER § 3553(a).

### A.    The Need for the Sentence to Promote Certain Statutory Objectives.

The Court's first and foremost responsibility in fashioning an appropriate sentence for a defendant is to impose a sentence that is sufficient, but not greater than necessary, to comply

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 814-221-9790

fax: 614-228-6680

13

with the purposes of sentencing.   18 U.S.C. § 3553(a); *Johnson*, 467 F.3d at 563 (citing *Foreman*, 436 F.3d at 643).   In determining the sentence to impose, the Court must look at both the offense and the defendant and impose a sentence that will:

(1)   reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(2)   afford adequate deterrence to criminal conduct;

(3)   protect the public from further crimes of the defendant; and

(4)   provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).   In Mr. Cummings's case, a sentence of probation only, or of home confinement with work release, is sufficient, but not greater than necessary, to achieve the goals of sentencing.

### 1.   Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense.

A sentence of community control or home confinement with work release, or a sentence much reduced from the recommended sentence, reflects the seriousness of Mr. Cummings's offense, promotes respect for the law, and provides just punishment for the offense.   The United States Sentencing Commission has noted that the Guidelines were intended to "ensure a *short but definite* period of confinement for a larger proportion of these 'white collar' cases, both *to ensure proportionate punishment* and to achieve deterrence." UNITED STATES SENTENCING COMMISSION, FIFTEEN YEARS OF GUIDELINE SENTENCING: AN ASSESSMENT OF HOW WELL THE FEDERAL CRIMINAL JUSTICE SYSTEM IS ACHIEVING THE GOALS OF SENTENCING REFORM 56 (2004) (emphasis added).

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

14

The additional consequences of Mr. Cummings's actions will also serve to provide just punishment for his offense. In addition to any sentence imposed, a sentencing court must also examine collateral consequences of the guilty pleas and sentence, including the dismantling of any business of the defendant. *See United States v. Gaind*, 829 F. Supp. 669 (S.D.N.Y. 1993). In *Gaind*, a downward departure was warranted because the defendant's ability to engage in similar or related conduct had been eliminated and he had suffered a substantial loss of assets and income. *Id.* The *Gaind* Court, therefore, found that these two factors were a source of punishment that provided both individual and general deterrence. *Id.* Here, Mr. Cummings has lost his self owned business. He will likely never again be able to run his own business because of his conviction. These collateral consequences of his offense, when combined with a sentence of community control or home confinement, are sufficient, but not greater than necessary, to provide just punishment for his offense.

### 2. Affording Adequate Deterrence to Criminal Conduct.

A sentence of community control or home confinement with work release, or a sentence much reduced from the recommended sentence, affords adequate deterrence to criminal conduct. There is "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006). As stated above, the United States Sentencing Commission has noted that the Guidelines were intended to "'ensure a short but definite period of confinement for a larger proportion of these "white collar" cases, both to ensure proportionate punishment and *to achieve deterrence*.'" *Id.* (quoting UNITED STATES SENTENCING COMMISSION, FIFTEEN YEARS OF GUIDELINE SENTENCING: AN ASSESSMENT OF HOW WELL THE FEDERAL CRIMINAL JUSTICE SYSTEM IS ACHIEVING THE GOALS OF SENTENCING REFORM 56 (2004)).

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

15

This general deterrence provision is satisfied in Mr. Cummings's case by a sentence of community control, home confinement, or a term of incarceration much reduced from that recommended by even the 2000 Guidelines. Someone in the same situation "tempted" to conduct himself in the same manner as Mr. Cummings need only look to the financial and social consequences of Mr. Cummings's offense in order to reconsider his actions; "thus, general deterrence [is] served." *United States v. Redemann*, 295 F. Supp. 2d 887, 897 (E.D. Wis. 2003). Mr. Cummings will never again be in a position to engage in similar conduct inasmuch as he has been barred from being a Stockbroker, Financial Advisor, selling securities and/or accepting funds from investors. *SEC v. Cummings*, No. C2 02 629, (http:///www.legalcasedocs.com/120/253/550.html). In addition, Mr. Cummings will be limited to pursue any independent business activities because in addition he owes the Security and Exchange Commission **$15,907,880.00**, the Internal Revenue Service **$3,237,446.00**, the State of Ohio Tax Division, **$560,365.00**, the City of Columbus Tax Division **$162,026.00** and he is also responsible for at least **$7,546,794.00** in Restitution in this case. This and the substantial loss of assets and income provide not only individual deterrence, but also general deterrence. *Gaind*, 829 F. Supp. 669.

The Supreme Court has also noted that while probationary sentences are less severe than incarceration, they are not without their restrictions. The *Gall* Court recognized the Supreme Court's prior dictate that "[i]nherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Gall*, 128 S. Ct. at 595 (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Probationers may not move, change jobs, or leave the district without notifying either the court or the probation office. *Id.* at 595–96. They are also frequently subject to special conditions related to the crime to which they pled guilty. *Id.* at

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phlipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

16

596. They must always be on guard that these conditions are not violated, which would result in immediate harsh sanctions against them. *Id.* These strict conditions, while not as severe as incarceration, still provide substantial deterrence against any future criminal conduct. A sentence not involving incarceration is not "'letting an offender off easily.'" *Id.* at 595 n.4 (quoting ADVISORY COUNCIL OF JUDGES OF NATIONAL COUNCIL ON CRIME AND DELINQUENCY, GUIDES FOR SENTENCING 13–14 (1957)). This is reflected in the U.S. Code, which very simply dictates that "imprisonment is *not* an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added).

### 3.   Protecting the Public From Future Crimes of the Defendant.

In addition to general deterrence, a sentence must also provide specific deterrence and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2)(C). As to specific deterrence, the Court must look not only to the sentence imposed, but also to the collateral consequences of the offense and conviction. *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006). Such collateral consequences include financial hardships, effects on reputation, and effects on family relationships. *United States v. Redemann*, 295 F. Supp. 2d 887, 897 (E.D. Wis. 2003).

Here, as described above, Mr. Cummings has lost his business. He will likely never again manage his own business (given his debt and the SEC Injunctions); his reputation as a successful Afro-American businessman is tainted perhaps beyond repair. Courts have noted these specific factors as reasons to impose sentences greatly reduced from those recommended by the Guidelines. *See, e.g., Adelson*, 441 F. Supp. 2d at 514. Additionally, his loss of substantial assets and income provide deterrence from him ever again engaging in similar conduct.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

17

Mr. Cummings's age is also indicative of the small chance he will ever again be involved in criminal activity. The United States Sentencing Commission conducted a study in 2004 measuring such rates of recidivism. U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 12 (2004), *available at* http://www.ussc.gov/ publicat/Recidivism_General.pdf [hereinafter *Measuring Recidivism*]. The study shows that as age progresses, the chance of recidivism decreases dramatically. *Id.* The study ended at age 50 and indicated that a 50-year-old defendant had less than a 20% chance of returning to criminal activity. *Id.* At the time of sentencing, Mr. Cummings will be 38 years old. Even without the other factors detailed above, his age alone indicates that he is very unlikely to ever again become involved in criminal activity. This low chance, combined with his deep remorse and shame over what he has done, makes Mr. Cummings deserving of a lower sentence than recommended by even the 2000 Federal Sentencing Guidelines.

The Sentencing Commission study also showed that those with no history of illicit drug abuse in the year before the offense occurred were 44% less likely to reoffend than those with a recent history of drug abuse. *Measuring Recidivism* at 12, tbl. 10. Mr. Cummings has had little illicit drug use for the last six years. (PSIR at ¶¶ 57 & 58.) Mr. Cummings falls into the category with the lowest chance of recidivism regarding both his age and his lack of illicit drug use. Combined, this makes his chance of recidivism statistically very unlikely.

Finally, the study shows that Mr. Cummings is unlikely to recidivate because of his educational status, his employment status, and his marital status. The study found that offenders who have been married are less likely to recidivate than those who have never been married. *Measuring Recidivism* at 12. It also found that offenders with some college education have lower rates of recidivism than those without a college education. *Id.* Finally, those offenders who had stable employment have recidivism rates that are almost 50% less

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

18

than those without stable employment. Mr. Cummings falls into categories with low recidivism rates regarding all of these factors. He has a college education, is stably employed, and is married.

The testimonials of his family and friends, and his own remorse for what he has done also lead to the conclusion that Mr. Cummings will never again be associated with any type of criminal activity. His friends note that it is "hard to find a person with a greater heart than Von Cummings" and that there "are so many lives that count on his presence." (Letter from Todd C. Buxton, April 29, 2008 [hereinafter Buxton Letter]). As his brother states: "He has a good heart." (Letter from Jon S. Cummings, IV, May 2, 2008 [hereinafter Cummings IV Letter]). As a close friend and former OSU Football Star, and Minnesota Viking Running Back, and NFL Pro-Bowler Robert Smith states: "I feel that if he can return quickly to help in the family business that he will be able to rectify the problems that he has caused myself and other people." (Letter from Robert Smith, April 20, 2008 [hereinafter Smith Letter]). His father's comments in the PSIR ¶¶ 48 and 49 state that "he was much too young and too ambitious to be successful in running his own businesses." "He believes that his son at the time of his involvement in this criminal affair was in over his head and very naïve in the way business is conducted." Von's mother reported in the PSIR ¶ 50 that "she believed that his behavior was out of character." The consensus from his family and friends is that Von was young, inexperienced, in over his head and didn't know what to do. His many supporters also believe that he will never again make the series of bad decisions that he made here. (Appendix II: Letters of Support).

<div style="margin-left:2em">

**4. Providing the Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

</div>

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

19

The final goal of sentencing is to provide the defendant with needed training or medical care in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). In Mr. Cummings's case, he has no need for educational or vocational training. He has taken college classes in business and is gainfully employed at Omega Commercial Finance Corporation. He needs no further educational or vocational training in order to earn money to repay the restitution owed in this case. Rather, he needs the opportunity to work to repay this restitution.

Additionally, Mr. Cummings's has no medical concerns.

In lieu of incarceration, which would interfere with any inability to pay the restitution owing in this case, a sentence of home incarceration with work release will serve as adequate punishment for the offense without imposing additional difficulties on Mr. Cummings. If sentenced to home incarceration with work release, he will continue to work diligently toward making the restitution payments owing in this case.

### B.    The Nature and Circumstances of the Offense.

Mr. Cummings never intended to commit an offense

In *United States v. Milne*, the court noted that the recommended sentence for a defendant who had caused a bank to lose approximately $500,000.00 was too high given the fact that the defendant had not used the funds to support a lavish lifestyle. 384 F. Supp. 2d 1309, 1310–1311 (E.D. Wis. 2005). Rather, he had used the money to attempt to "keep a sinking business afloat." *Id.* at 1311. The Guidelines recommended a sentence of 18–24 months, but the court refused to sentence in that range. *Id.* Rather, the court sentenced Mr. Milne to five months imprisonment and five months of home confinement followed by five years of probation. *Id.* at 1313. The court noted that "[a] defendant who offends in order to support his family is less culpable and thus, more deserving of leniency than one who steals from the vulnerable to finance a lavish lifestyle." *Id.* at 1313 n.4. It found that such a

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 50 of 80

consideration was not treating the Guidelines cavalierly, but rather was mandatory in an effort to consider the § 3553(a) factors. *Id.*

Here, as in *Milne*, Mr. Cummings has never lived a lavish lifestyle.   Rather, he used the money owed to investors to pay some investors and keep the company operating with the possibility to reimburse all investors. He was attempting to support his employees. *Id.* He also used the money to reimburse some investors.   Unfortunately, his attempts were unsuccessful and he was unable to keep his business afloat.

### C. History and Characteristics of Mr. Cummings.

Mr. Von Cummings's family and friends alike are stunned by the charges brought against him.  Every member of his family described him as loyal, generous and giving to others.  His brother describes him as "hardworking, caring, giving, loving, and loyal."  His mother notes that he is "kind, loving, and generous." (Letter from Mildred E. Cummings, Feb. 4, 2008 [hereinafter M. Cummings Letter]).  She also reflects that he has been generous since he was a child.  In fact, according to his family, Mr. Cummings is very generous, sometimes to a fault.

### D.    The Range Established by the Guidelines and the Types of Sentences Available.

In *Booker*, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the section of the federal sentencing scheme that made it mandatory for courts to sentence within the range suggested by the Sentencing Guidelines.  543 U.S. at 265.  This renders the Guidelines merely advisory. *Id.*  Thus, this Court is not required to sentence Mr. Cummings to the length of imprisonment recommended by the Guidelines, or even to imprisonment at all.   It may consider all of the associated factors and sentence him to home confinement or community control with work release and probation.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

21

Based on an offense level of nineteen (19) and a criminal history category of Level I, the Guidelines recommend a term of imprisonment of 27–33 months. This recommended sentence does not take into account any of the § 3553 (a) factors. The probation officer notes that Mr. Cummings "has a good work history and a limited history of criminal involvement." *Id.*

Given Mr. Cummings's remorse and acceptance of responsibility, his low likelihood of recidivism, and the emotional and financial impact a prison sentence would impose on his family, a sentence of home confinement or of a term of incarceration far less than 27 months is warranted.

### E. The Need to Provide Restitution to Any Victims of the Offense

In determining a sufficient but not greater than necessary sentence, a sentencing court must look to the need for the offender to provide restitution to any victims. Mr. Cummings currently owes **$15,907,880.00** to the Securities & Exchange Commission, as well as **$3,237,446.00** to the United States Internal Revenue Service, **$560,365.00** to the State of Ohio Tax Division, **$162,026.00** to the City of Columbus Tax Division, and at least **$7,546,794.00** restitution in this case, making his current financial obligations **$27,414,511.00**. If incarcerated, Mr. Cummings's ability to pay restitution will be severely hampered. He may end up being able to pay as little as $25.00 per quarter toward his restitution obligation. If imprisoned for 27 months as recommended by the Guidelines, he will reduce his restitution obligation by as little as $225.00 during his entire imprisonment period.

Sentencing courts have dramatically reduced sentences in cases where the offender owes a great deal of restitution that he would be unable to pay if incarcerated. For example, a court in the Eastern District of Wisconsin sentenced a defendant to community and home confinement with work release in lieu of incarceration in an effort to allow him to repay the

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

22

restitution owed. *United States v. Peterson*, 363 F. Supp. 2d 1060, 1063 (E.D. Wisc. 2005). Of great significance is the fact that Mr. Cummings is ready, willing and able to work to repay his debt. A sentence of imprisonment will thwart this effort.

### IV.    CONCLUSION

The sentence range suggested by the 2000 Guidelines in this case is substantially greater than is necessary to achieve the purposes of sentencing. This is not a situation where the defendant appears likely to return to criminal activity in the future. Rather, it is a situation where Mr. Cummings made a series of bad decisions when faced with extreme financial upheaval.

This matter has emotionally and financially devastated Mr. Cummings. It has also devastated his family and friends. Mr. Cummings is determined to repay the restitution obligation owed to victims and will have a more difficult time doing it if incarcerated for any significant time period. He respectfully requests that the court sentence him to home confinement with work release, or a sentence greatly reduced from that recommended by the Guidelines, in order for him to be able to successfully repay the victims. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully Submitted,

s/Joseph E. Scott
Joseph E. Scott (0061640)
Attorney for Defendant
35 East Livingston Avenue
Columbus, Ohio 43215
Phone: (614) 221-9790

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

23

## CERIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document has been served by electronic delivery through PACER/ECF upon the Assistant United States Attorney, 303 Marconi Boulevard, Second Floor, Columbus, Ohio 43215, this __9th__ day of May, 2008.

Respectfully Submitted,

s/Joseph E. Scott
Joseph E. Scott (0061640)
Attorney for Defendant

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillips

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

24

# APPENDIX I

# OMEGA COMMERCIAL FINANCE CORPORATION (OCFN)

# PRESS RELEASES.

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

25

# Omega Annouces an International Joint Venture Development With BBB Development in Puerto Penasco, Mexico

Wednesday April 9, 4:07 pm ET

MIAMI, FL--(MARKET WIRE)--Apr 9, 2008 -- Omega Commercial Finance Corp. (OTC BB:OCFN.OB - News), a high/yield commercial real estate finance company that specializes in lending to middle market borrowers, is announcing a joint venture development with BBB Developments. Jon S. Cummings IV, President and CEO, has executed a Joint Venture LOI with Chris Crane of BBB Developments. The project called Los Corrales Condominiums is a 308 unit direct ocean and beach front condominium development located in Puerto Penasco, Mexico just 4 hours south of the Arizona border, in the free trade zone also known as the Gulf of California/Sea of Cortez.

Omega has been engaged for two years to arrange the initial construction and land "take-out" financing for BBB Developments. Despite the lack of interest by Omega in the US condominium market, this opportunity has opened their eyes to the strong international resort destination market, specifically in Puerto Penasco. Lisa-Babbage Jackson, Omega's real estate analyst and board member with over 25 yrs of expertise in the real estate industry, was presented a feasibility report that had a quote from a recently published article by the Wharton School of Business stating, "The real estate boom is under way in Latin America -- with Mexico being the region's biggest winner." This boom is evidenced in part by Marriott Hotels announcing a newly planned development of a 4-diamond/star hotel just minutes away from the Los Corales site and Puerto-Penasco (Rocky Point) announcing the opening in 2009 of international flights from major cities.

Omega presented to Chris Crain the opportunity for a joint venture rather than the traditional financing structure. Omega will be responsible for the $61 million construction costs and receive 45% of the net profit from the sales. This was a "No Brainer" for Omega, considering 108 of the units are pre-sold with hard contracts in place which represent $38 million in sales. BBB Development has been self-funding this operation from their own capital and groups of personal friends and family members. BBB Developments acquired the property from the Godoy family for $11.4 million through seller financing, also increasing the property's market value from $12 million to a recently appraised value of $18 million. Omega estimates generating a two -year annualized IRR of 25% or $39.5 million in net profits. Omega anticipates construction to start once they have their overall high/yield commercial real estate credit facility in place within the next 30 to 90 days. Jon S. Cummings III, the Chairman of Omega, has noted that, "We believe this will benefit our shareholders both over the near and far term while generating attractive returns. In addition, the joint venture is expected to generate significant capital to redeploy into supplementary high/yield commercial real estate financing opportunities."

Safe Harbor Statement: The Private Securities Litigation Reform Act of 1995 provides a "safe harbor" for forward-looking statements. Certain of the statements contained herein, which are not historical facts, are forward-looking statements with respect to events, the occurrence of which involve risks and uncertainties. These forward-looking statements may be impacted; either positively or negatively, by various factors. Information concerning potential factors that could affect the Company is detailed from time to time in the Company's reports filed with the Securities and Exchange Commission.

*Contact:*
```
     Contact:
     Omega Commercial Finance Corp.
     (305) 677-0306
```

Source: Omega Commercial Finance Corp.

**Press Release**                                    Source: Omega Commercial Finance Corp.

# Omega Executes Letter of Intent With Commercial Real Estate Developer; With Assets of $1 Billion

Monday April 14, 8:30 am ET

MIAMI, FL--(MARKET WIRE)--Apr 14, 2008 -- Omega Commercial Finance Corporation (OTC BB:OCFN.OB - News) has executed a Letter of Intent for a "Plan and Agreement of Merger" with a major owner and development company in California. Present assets under consideration for the transaction are estimated at $1 billion. Their merger will consist of a combination of cash and stock, and will be handled by OCFN's security counsel, Gregg E. Jaclin, Esq., Anslow & Jaclin, LLP. Richard Hawkins & Associates, a Los Angeles-based certified accounting firm, will be handling the audit of the financials necessary for consolidation with OCFN. Preliminary estimates of market value of the real estate holdings approximate $1 billion. Complete appraisal analysis will be undertaken by a MAI certified appraiser and credentialed advisors. Omega anticipates that the merger can be perfected upon completion of the audit and due diligence of the merger candidate. This process will include, but not be limited to, review of tax return filings, financial statement documentation, feasibility study, environmental reviews, and abstracts of title.

Since OCFN began trading on the NASDAQ OTC Bulletin Board on January 18, 2008, one of the major objectives has been to increase its shareholders value through strategic alliances. Companies with substantial commercial real estate holdings are considered, because these synergistic mergers will enable OCFN to implement a formidable balance sheet lending platform. When the proposed merger is completed, with consideration of the current estimated real estate value of $1 billion, and outstanding common shares of 35 million, the post consolidated balance sheet will have an estimated tangible book value of approximately $28.57 per share. The current OCFN book value has been weak due to the absence of commercial real estate holding. Moreover, management believes that if the merger does become effective, OCFN will meet two of the four "Standard" to apply for the American Stock Exchange listing. Still there is no guarantee of OCFN's acceptance by the AMEX, but more than possible. The Company plans to prudently leverage the use of the post merger Balance Sheet's book value for the origination of diversified, risk adjusted, short to mid term high/yield debt commercial real estate loans; consisting of office, industrial, retail, hotel and resort destination properties. Additional, global joint venture development projects will also be entertained and evaluated.

This is an opportune time for OCFN in the presence of a credit crisis and associated tightening of traditional bank's financing guidelines. The cumulative result of these economic issues is a scarcity of funds for middle market borrowers seeking commercial real estate financing. There is, concurrently, a growing number of "cash deprived, but land rich," development companies seeking liquidity. Hence, Jon S. Cummings, IV, President/CEO and the respective Board of Directors for OCFN believe that their shareholders, as well as those of the candidate Company, will be well served by this merger and poised to serve all parties for the continuing future.

Safe Harbor Statement: The Private Securities Litigation Reform Act of 1995 provides a "safe harbor" for forward-looking statements. Certain of the statements contained herein, which are not historical facts, are forward-looking statements with respect to events, the occurrence of which involve risks and uncertainties. These forward-looking statements may be impacted, either positively or negatively, by various factors. Information concerning potential factors that could affect the Company is detailed from time to time in the Company's reports filed with the Securities and Exchange Commission.

*Contact:*

        Contact:
        Omega Commercial Finance Corp.
        (305) 677-0306

Source: Omega Commercial Finance Corp.

# APPENDIX II

## LETTERS OF SUPPORT

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Phillpps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 58 of 80

# APPENDIX II
## Table of Contents

**Index of Letters on behalf of Von Cummings:**

Pages

BABBAGE-JACSKON, Lisa (Colleague/Friend) ................................. 30-31

SMITH, Robert (Friend) ......................................................... 32

CUMMINGS, Jon S., III (Father) ....................................... 33-34

CUMMINGS, Jon S., IV (Brother) ......................................... 35

BUXTON, Todd (Friend) .................................................. 36-37

GEORGIEVA, Theodora (Wife) ....................................... 38-39

TERRELL, Barbara (Mother) ........................................... 40-42

JOSEPH E. SCOTT
CO., LPA
Joseph E. Scott
Adam Lee Nemann
Morgan M. Masters
W. Martin Midian
Logan Philipps

35 E. Livingston Ave.
Columbus, Ohio
43215

phone: 614-221-9790

fax: 614-228-6680

29

06 May 2008

Honorable Judge John D. Holschuh

United States Federal Courthouse

85 Marconi Blvd.

Columbus, OH  43215

RE: U.S. of America –v- Von C. Cummings

Case No: 2:06 CR 0045

Dear Judge Holschuh:

I am writing in support of Von C. Cummings whom I have known for much of his life. For thirty years I have had the pleasure of being friends with the Cummings family, but it is only within the past two years that I have had the privilege of a professional association with Von.

When first invited to join the "Omega" family of businesses in an advisory capacity, I was pleased to have the opportunity to observe the sophistication and maturity of Von, whom I had known as a child. And as I began to work more closely with him, his Brother and Father, I gained enormous respect and admiration for his business acumen and moral authenticity. My role within the organization has largely encompassed the coordination and facilitation of due diligence evaluation of prospective commercial real estate transactions. The need for this internal function emanated, in part, from Von's objective to achieve the highest level of honest, reliable, and verifiable information, relative to the professional services rendered by Omega. I believe that this is the mindset and dedication of Von C. Cummings, and is supported by the talents of and collaboration with his Brother, Jon IV and his Father, Jon S. Cummings, III. Von genuinely aspires to the highest measure of professional integrity and accountability.

While his previous errors in judgment cannot be reversed, the responsibility for them is accepted, as he strives to continue with personal and professional advancement under the perpetual cloud of ominous legal consequences. This precarious situation, however, has undoubtedly served to strengthen his character and enabled him to chart a more diligent course for future decision making.

Gifted in intellect, compassion and tenacity, Von's many attributes point to a destiny of great success as a community and business leader. Notwithstanding prior mistakes, he is ethically driven. I am a constant witness to his professional conduct and his unwavering commitment to honesty at every level. I feel confident that Von is eager to make amends for any damages which have occurred as a result of his actions, and is hopeful for the opportunity to move forward with his life as a responsible and respected member of society.

Case: 09-03134    Doc# 34    Filed: 07/09/10    Entered: 07/09/10 16:45:51    Page 60 of 80

In your deliberation of this matter, I humbly request consideration of a controlled probation scenario for Von. I remain at your disposal, should you desire further discussion with me on this issue. I will also continue to anticipate the many accomplishments forthcoming from this talented young man, if given the opportunity to positively and productively advance as a valued and responsible citizen.

Thank you once more for your consideration.

Respectfully,

Lisa Babbage-Jackson

3470 East Coast Avenue, Ste 806

Miami, FL 33137

937/673-8418

To The Honorable Judge Holschuh,

I am writing in regards to Von cummings, who I have known for twelve years. I know the he has made mistakes and he acknowledges this as well. I also know that he now works with his family business and hopes to repay individuals that have lost money. Von has always been a hard worker and he regrets that people lost money in his attempts to make profits for them. I know he has worked very hard for the last five years with that family business and has seen it grow from a small 1 office business to a publicly traded company. He has told me of his plans to try and repay people and I feel that if he can return quickly to help in the family business that he will be able to rectify the problems that he has caused myself and other people. For these reasons, I hope that he will be allowed to re-join the family business and the community at large as soon as Your Honor thinks it is proper.

Sincerely,

Robert Smith
19371 sw 61st st. Pembroke Pines Fl. 33332
(614)419-3209

32

Honorable Judge John D. Holschuh

United States District Judge

The U.S. District Court for the Southern District of Ohio

85 Marconi Boulevard

Columbus, OH. 43215                    RE: Von C. Cummings

                                       Case No. 2:06 CR 45

May 2, 2008

Dear Judge Holschuh,

This letter is written on behalf of Von C. Cummings. I am his Father and have been involved with his growth and development from birth through the present day. I was, however, out of the Country on business with my other Son, during the time of Von's difficulties.

Through Von's passages, he has always demonstrated the will to help, achieve, and lead others. This attitude was prevalent throughout his athletic career in football, wrestling, and track and field activities.

Upon the completing his two Bachelor of Arts majors in Marketing and Management, at The Defiance College, he ventured into the brief employment with PaineWebber and Northwestern Mutual Life with great expectations and enthusiasm. The financial business industry was a lifetime ambition for Von. Unfortunately, while on his own/self employed the "business of business" is not as transparent to a young 26 year old entrepreneur and aggressive achiever. This is where I see the mistake of his lifetime has taught him a lesson that he reflects upon daily as he confronts situations requiring professional trust and ethics.

I sincerely feel that he has accepted the financial responsibility caused by his actions and is constantly reminded of the affect on his intended career. In dealing with the reality of his current legal situation, Von understands and practices the behavior of a model citizen. He is committed to be a very positive professional example in the community.

His entire family and I support him and request that you allow him to receive controlled probation, permitting him to provide restitution to the victims who suffered financial loss. We are confident that if granted probation, he will strictly abide by those rules imposed by the Court, and will regulate activities in a responsible and acceptable manner in our society. We have been positioning our company to allow attorney Joe Scott the attorney to use our corporate stock to set up a "Victims Trust" to help insure the repayment of these individuals.

Whatever the outcome, his family will remain supportive to assure his continuing development and positive contribution to this community at large.

Respectfully,

Jon S. Cummings, III                    3470 East Coast Ave. Apt. 1406

                                        Miami FL. 33137     937-672-1791

May 2, 2008

Honorable Judge John D. Holschuh
United States Federal Courthouse
85 Marcooni Blvd.
Columbus, Ohio 432165

RE: U. S. of America v. Von C. Cummings
Case Number 2:06 cr 00045

Dear Judge Holschuh:

I am writing in support of Von C. Cummings, whom I have known for 38 years, as his brother and business associate. I am aware Von has pled Guilty to Mail and Wire Fraud on February 15, 2006, and is scheduled for sentencing on June 6, 2008, in your Courtroom. He has a good heart; he welcomed my wife Rama into the family with open arms, even though she is from another country, which was not the case for all our family. This made her feel better about being so far away from home (Africa). My son, J.T., loves his uncle, my brother has never told us no in watching him, because he knows that he is going away, this will be very tough on my son.

On a business note Von is very important to my business operations and to be honest I don't know how the company will survive without him, I think by him working that will be the best chance for the victims to receive compensation. Plus, he and I are aware of the consequences of any wrong doing. For all of these reasons, I hope and pray that you permit Von C. Cummings to return to his family/ friends/ community as soon as possible.

Sincerely,

Jon S. Cummings IV
1504 Bay RD. APT 710
Miami, FL 33139
305.672.1612

April 29, 2008

Honorable Judge John D. Holschuh
United States Federal Courthouse
85 Marcooni Blvd.
Columbus, Ohio 432165

RE: U. S. of America v. Von C. Cummings
Case Number 2:06 cr 00045

Dear Judge Holschuh:

I am writing in regards to Von C. Cummings, whom I have known for 13 years, through a mutual friend where we established a close friendship ourselves that has grown stronger with each year.

I am aware Von has pled Guilty to Mail and Wire Fraud on February 15, 2006, and is scheduled for sentencing on June 6, 2008, in your Courtroom. As I have mentioned earlier, I have known Von for a long time and I too was affected by the subject matter related to this case seeing that I had money invested with Von during that period. At the time our association was merely no more than occasional social gatherings where I would run into him from time to time and basically knew him through mutual friends. I quickly found out that he was trusted and liked by many and appeared to have a great knack for business. Over time I basically grew more comfortable with Von and decided to invest some money with him. However it wasn't until after the events associated with this case did he and I really strengthen the friendship and make it what it is today.

I have had the fortunate opportunity to really find out what type of person Von Cummings really is and it is quite different than what many have made him out to be. There hasn't been a day that goes by where Von hasn't mentioned his deepest regrets for everyone affected by this case and sadly wishes he could change those events. He was

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 66 of 80

very young relatively speaking when then this all began and very ambitious. That ambition, youth, and desire to make a difference in not only his own life but in others around him played a role in what led to this unfortunate situation.

With that said, Von is the first person who will tell anyone that he takes full accountability of his actions. He has always made himself visible and accessible to all of those who requested his attention. He never once ran from the situation or rush to point a finger in someone else's direction. Von has spent every day trying to rebuild not only a business and a positive reputation, but he is working so hard towards one day being able to financially and emotionally mend those wounds caused by his actions.

I have learned first hand that is it hard to find a person with a greater heart than Von Cummings and if you simply spend just a short period of time with him you will quickly see what I mean. He has many who care deeply for him and will truly not be the same with him away. There are so many lives that count on his presence that it will be tough with out him.

Even at Von's lowest moments, I have seen him somehow make sure that everyone around him has a smile on their faces despite his own misery.

He is like a brother to me and my wife and kids simply adore him. Von is an older wiser man who only wants to take care of his family and friends.

For all of these reasons, I hope and pray that you permit Von C. Cummings to return to his family, friends, and community as soon as possible.

Sincerely,

Todd C Buxton
3911 Traymore Drive
Dublin, Ohio 43016
614-932-0421

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 67 of 80

May 8, 2008


Honorable Judge John D. Holschuh
United States Federal Courthouse
85 Marcooni Blvd.
Columbus, Ohio 432165

<div align="right">

RE: U. S. of America v. Von C. Cummings
Case Number 2:06 cr 00045

</div>

Dear Judge Holschuh:

    I am writing in support of my husband, Von C. Cummings, whom I have known since February 22 of the year 2002. We have been inseparable since that day. Von has been my partner in life, my support and the man I love with all my heart and highly respect. I remember like it was today, the day he proposed to marry me on a surprise walk to the beach at 5:30 in the morning on Christmas day in the year of 2005. It was the most romantic day of my life. We married this year on April 11th. I am aware Von has pled Guilty to Mail and Wire Fraud on February 15, 2006, and is scheduled for sentencing on June 6, 2008, in your Courtroom.


    My husband, Von Cummings has become an irreplaceable part of my life since the day we met in a restaurant in Columbus Ohio. He is my partner in life, my lover, my best friend, my soul mate and anything I have always wished for, ever since I was a little girl. I often had dreams about him way before we even met. It has always been so strange to me how my dream came true and I met the man that I have always wanted, charming, caring, trustworthy and supportive. He is the man that I chose to spend the rest of my life with. We have been looking forward to starting a family and raising our two beautiful sons, who we had already named, Maximus and Caesar. Von is a very honest, trustworthy man. I trust him with my life. He provides for his family and I and has been always there for us through thick and thin. He is a stable man, who respects and honors his friends and family. Anyone knows that you can always count on Von in time of need. We have a small circle of friends that can prove that.


    I stand behind and support my husband Von Cummings one hundred and ten percent. I believe in his ability to repay those people and I know he will do anything in his power to fix his young unthought-of mistakes. We are all imperfect, especially when we are in our early twenties.

We all do things that we come to regret in the future. It has been over ten years since his young and inexperienced behavior. He has grown up now and has learned a great deal of life and his business. Life itself has already punished him for what he had done. He has suffered many years already. He is a stable man now, a workaholic, as anyone who knows his says, he is responsible and is aware of any step he takes. He thinks through everything he does just to make sure he is not doing anything wrong. For the past six years, Von has been working very hard to accomplish the requirements that are needed to fix his wrongs and meet his inner piece and soul. I know for a fact, based on his strong personality, educational background and knowledge that he will meet all the requirements in order to return the money of the people who were involved.

Von Cummings is my husband I had always dreamed of, my partner in life and my soul mate. He is the man that I want to spend the rest of my life with. He is the man, whose children I want to raise. For all of these reasons, I pray that you don't take him away from me, away from his family and his friends. I love him with all of my heart and I will be grateful to you, Judge Holschuh until the day I die. My heart is my Von Cummings.

Truly,

Teodora Georgieva
1331 Brickell Bay Drive #3305
Miami, FL 33131
h. (305) 577-4642
c. (305) 389.0566

Barbara P. Terrell
5803 Denlinger Road
Trotwood, Ohio 45426

March 5, 2007

Dear Your Honor:

My name is Barbara Terrell I have retired from General Motors after 33 years of
Service. I am the mother of two sons one is that of Von Cummings. Who will
be coming before you soon. No one could have told me I would be writing to
a Judge about my son.

My mother was a school teacher and my father was a small businessman. Education
was important to me for my sons. When Von was about eight years olds, we moved
to a White community. I made this choice because they had an excellent school system
(Englewood, Ohio). During this time period I was still married to their father. Von
adjusted well to his new environment and made many friends over the years.

One of the neighborhood Dad's ask me if my son Jon could play Pee-Wee football.
I heard Von crying in his room and I asked what was wrong? Von said he wanted
to play to, I told him I could sign him up. The day he set his foot on the football
field his life changed. Von made the team and at a very young age was developing
into a excellent player. What he lacked in size he made up in speed and determination.
I believe this boost his self-esteem and found something he could do as well or better
than his older brother. Although they were only 13 months part they had a strong
rivalry between them. Jon always looked out for little brother, I am almost sure that
Von has never been in a fist fight. Von was asked to run in the summer with a private
track team in (Trotwood, Ohio). He had the opportunity to travel with the team to,
Michigan, Illinois, and Indiana. He was a distance runner and was on a Jr.
Championship team.

Sports became Von life, he ate and drank sports. Sports helped him to keep his
grades up but I had to stay on him when football season was over to stay in
his books. Von sometimes had lacked the ability to stick with something without
getting bored and could be easily distracted. All through school except college his
teachers told me he did not work to his full potential.

Von has always had a job he started at the age of ten. His first job was a paper route before going to school in the morning. Von shared his route with his best friend. One day he told me he bought his friend out from the route I ask him why? He told me his friend was to lazy and would not get up in time to delivery their papers. I told Von this would be his route not mine. He delivered his papers on his bike every morning and had one of the largest route in the area. His customers loved him, on holidays they would leave him money, candy and cookies. If Von was ill his customers would call and ask about him him. He had a variety of jobs through school sub house, selling knives and working in a foundry.

A change was about to accrue in Von life, his father and I were divorcing after eighteen years of marriage. This was a difficult time for Von, he took it much harder than his brother. I made arrangements for my sons to live 6 months with me and 6 months with their father, this kept them in the same school system. This arrangements worked for about two years until they had a problems with their step-mother. Von and his brother Jon came to live with me full time. I have always been the stable force in his life with the support of a close knit family.

Von played football and ran track through high school. When it came time to graduate Von was one credit short. He could not march with him class and he had to go to summer school to finish. This was his own doing by changing classes during the year. I know he was hurt and angry and tried not to show it. He carries his emotions close, I believe this the results of playing sports all his life and trying to be in control.

When Von graduated from high school he went on to attend Sinclair Community College and worked in the evening. He worked at Sub House in the local mall. He was promoted to manger, the owner was Von best friend dad. Mr. Dean the owner trusted Von to drive his cars and take the money bag to the bank every day. This family was of wealth, Mr. Dean thought a lot of Von and he was a mentor to him. One evening at one of his other business Mr. Dean shot him-self and died. Von could never understand why, because to felt Mr. Dean had so much to live for and Von was very hurt.

A coach from Defiance College saw some high football films and notice Von. He contacted Von and offered him a four year scholarship. The only thing Von had to buy were books. Every summer Von would find a job or the coach would help the players find a job. Once again Von made many great friends. The coach took him under his wings. Von did well in college after he got over his freshman year.

Even thou Von was the last one to leave home, he would always phone to check on me. He was worried that I was alone, he made sure he would sent me cards on Mother's Day or drive all the way home to see me. While he was playing football in college, I attended every home and away game. After Von graduated he sent films out to different NFL teams. He went out to California to try out for a team but he never received a chance to try out. Von had a dream to play in the NFL even thou it did not work out he felt he had to try. He returned back home.

I raised Von from a boy to a man. I know him better that any one I know he is out going, loves his family and his friends. He has a love for children and dogs. My son can something lack follow through, let things go on to long before he take cares of them. He can easily be impressed by people and their things. He can lack patience when he becomes bored.

I have tried to give you a picture of my son and where he comes from and to be as open and honest as I can. This is the most troubling letter I have every written I asked God to guide me.

Respectfully Yours

Barbara P. Terrell

Case: 09-03134   Doc# 34   Filed: 07/09/10   Entered: 07/09/10 16:45:51   Page 72 of 80

# EXHIBIT 4

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| Southern | District of | Ohio |
|---|---|---|

UNITED STATES OF AMERICA
**V.**

VON C. CUMMINGS

## JUDGMENT IN A CRIMINAL CASE

Case Number:     2:06-cr-45

USM Number:     76442-061

Joseph E. Scott
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    1 & 21 of the Indictment

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1341 | Mail Fraud | June 2002 | 1 |
| 18:1341 | Mail Fraud | June 2002 | 21 |

The defendant is sentenced as provided in pages 2 through    7    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)    2 - 20              ☐ is   X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

June 26, 2008
Date of Imposition of Judgment

_John D. Holschuh_
Signature of Judge

John D. Holschuh, United States District Judge
Name and Title of Judge

7-28-08
Date

AO 245B   (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___7___

DEFENDANT:        Von C. Cummings
CASE NUMBER:      2:06-cr-45

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

40 months on Count 1 and 40 months on Count 21, with these sentences to run concurrently.

X The court makes the following recommendations to the Bureau of Prisons:
   The Court recommends that defendant participate in the 500-hour residential drug abuse program (RDAP) if eligible, and the Court also recommends FCI Coleman (Low) at Coleman, Florida.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐   at _____ ☐ a.m.   ☐ p.m.   on _____ .

   ☐   as notified by the United States Marshal.

X The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐   before 2 p.m. on _____ .

   X   as notified by the United States Marshal.

   ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:      Von C. Cummings
CASE NUMBER:    2:06-cr-45

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

3 years on each of Counts 1 and 21, to run concurrently.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Judgment—Page ___4___ of ___7___

DEFENDANT:        Von C. Cummings
CASE NUMBER:      2:06-cr-45

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall participate in a program of substance abuse treatment as directed by the United States Probation Office until the defendant is released from such a program by the probation office.

DEFENDANT:         Von C. Cummings
CASE NUMBER:       2:06-cr-45

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ -0- | $ 8,380,094.00 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

X   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| National Association of Christian Athletes | $870,000.00 | $870,000.00 | 100% |
| Russel Klein | $342,250.00 | $342,250.00 | 100% |
| Jeff Cobb | $100,000.00 | $100,000.00 | 100% |
| Frank & Joe Valinho | $800,000.00 | $800,000.00 | 100% |
| C. Patrick McAllister | $81,500.00 | $81,500.00 | 100% |
| John Geniali | $359,950.00 | $359,950.00 | 100% |
| Ronald Fewster | $349,608.94 | $349,608.94 | 100% |
| Bonnie Raineri | $2,255,383.93 | $2,255,383.93 | 100% |
| Ralph Tamm | $240,000.00 | $240,000.00 | 100% |
| Donald & Jean Billy | $60,000.00 | $60,000.00 | 100% |
| Mark & Michelle Billy | $156,632.66 | $156,632.66 | 100% |
| Christine Bustamante | $19,120.00 | $19,120.00 | 100% |
| Steven Baldwin | $72,000.00 | $72,000.00 | 100% |
| Daniel Delorenzi | $100,000.00 | $100,000.00 | 100% |
| Michael Naples, Jr. | $57,239.56 | $57,239.56 | 100% |
| Adi Naples | $77,625.00 | $77,625.00 | 100% |
| Michael Naples, Sr. | $31,750.00 | $31,750.00 | 100% |
| Steven Houseman | $450,000.00 | $450,000.00 | 100% |
| Madelyn Good | $358,734.84 | $358,734.84 | 100% |
| **TOTALS** | $ SEE PAGE 6 | $ SEE PAGE 6 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   X   the interest requirement is waived for the   ☐  fine   X   restitution.

   ☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Judgment—Page   6   of   7

DEFENDANT:      Von C. Cummings
CASE NUMBER:    2:06-cr-45

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Wenfu Chen | $765,000.00 | $765,000.00 | 100% |
| Debbi Ekmark | $761,300.00 | $761,300.00 | 100% |
| **TOTAL AMOUNT OF RESTITUTION:** | **$8,308,094.00** | **$8,308,094.00** | |

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:        Von C. Cummings
CASE NUMBER:      2:06-cr-45

Judgment — Page    7    of    7

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    X    Lump sum payment of $    8,308,294.00    due immediately, balance due

    ☐   not later than _____ , or
    X   in accordance   ☐ C,   ☐ D,   ☐ E, or   X F below; or

B    ☐    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    X    Special instructions regarding the payment of criminal monetary penalties:

Within 60 days of the commencement of the term of supervised release, the probation officer shall recommend a payment schedule to the Court to satisfy any unpaid balance of the restitution. The Court will enter an order establishing a schedule of payments

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.